10-5283-cr
United States v. Broxmeyer

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: February 2, 2012      Decided: August 28, 2012)

Docket No. 10-5283-cr

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

TODD J. BROXMEYER,

*Defendant-Appellant*.

Before:

JACOBS, *Chief Judge*, WINTER and RAGGI, *Circuit Judges.*

On appeal from an amended judgment of conviction for possession and attempted production of child pornography entered in the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge*), defendant challenges his 30-year prison sentence as procedurally and substantively unreasonable.

AFFIRMED.

Chief Judge JACOBS dissents in a separate opinion.

1

LISA PEEBLES (James P. Egan, *on the brief*), Federal Public Defender's Office, Syracuse, New York, *for Defendant-Appellant*.

PAUL D. SILVER (Miroslav Lovric, *on the brief*), *on behalf of* Richard S. Hartunian, United States Attorney for the Northern District of New York, Albany, New York, *for Appellee*.

REENA RAGGI, *Circuit Judge*:

In 2008, former high school athletic coach Todd J. Broxmeyer was found guilty after a jury trial in the United States District Court for the Northern District of New York (Thomas J. McAvoy, *Judge*) of two counts of producing child pornography, see 18 U.S.C. § 2251(a) (Counts One and Two); one count of attempting to produce child pornography, see id. § 2251(a), (e) (Count Three); one count of transporting a minor across state lines with the intent to engage in criminal sexual activity, see id. § 2423(a) (Count Four); and one count of possessing child pornography, see id. § 2252A(a)(5)(B) (Count Five). The victims of all these crimes were teenage girls under Broxmeyer's purported tutelage and care.

On Broxmeyer's first appeal, this court reversed his convictions on Counts One, Two, and Four. See United States v. Broxmeyer, 616 F.3d 120 (2d Cir. 2010). As to the first two counts, the court concluded that the evidence was insufficient as a matter of law to permit the jury to find that Broxmeyer had solicited the production of—rather than simply received—the two images of child pornography at issue. See id. at 124–27. As to Count Four, the court, by a divided vote, concluded that Broxmeyer's interstate transportation of

a 15-year-old girl <u>after</u> compelling her to engage in sodomy could not support a conviction for interstate transportation of a minor with intent to engage in criminal sexual activity, that object already having been achieved before the defendant crossed any state border. <u>See</u> <u>id.</u> at 128–30; <u>see also</u> <u>id.</u> at 130 (Wesley, J., dissenting in part). Vacating Broxmeyer's original 40-year prison sentence, this court remanded for resentencing on the remaining two counts of conviction for possession and attempted production of child pornography. <u>See</u> <u>id.</u> at 130.

Broxmeyer now appeals from so much of the amended judgment entered on December 29, 2010, as sentenced him to concurrent prison terms of 30 years on Count Three's attempted production charge and 10 years on Count Five's possession charge. He argues that the sentence is infected by various procedural errors and, in any event, that 30 years' incarceration is substantively unreasonable in his case. Indeed, Broxmeyer maintains—and our dissenting colleague agrees—that any sentence higher than the minimum 15-year prison term mandated for Count Three, <u>see</u> 18 U.S.C. § 2251(e), would be substantively unreasonable. We reject both arguments as without merit.

## I.       **Background**

### A.       <u>The Conduct Informing the Challenged Sentence</u>

Precisely because Broxmeyer and the dissent maintain that <u>only</u> the mandated minimum sentence for Count Three can be substantively reasonable in this case—in short, that the district court effectively had no sentencing discretion whatsoever—it is necessary to set forth at the outset and in some detail the totality of the evidence relevant to sentencing

3

that prompts us emphatically to reject this argument. The dissent criticizes this approach, maintaining that it unfairly reaches beyond "the offense of conviction," which "amounts to a single act of attempted sexting." Jacobs, C.J., Op. Dissenting ("Jacobs, C.J., Op."), post at 3–4. This is wrong as a matter of law. While a district court cannot sentence a defendant to more severe punishment than that prescribed for the crimes of conviction, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" within the prescribed range. 18 U.S.C. § 3661; see Williams v. New York, 337 U.S. 241, 247 (1949) (recognizing that sentencing judge is "not confined to the narrow issue of guilt" in determining punishment, but must act on "the fullest information possible concerning the defendant's life and characteristics"); accord Pepper v. United States, 131 S. Ct. 1229, 1240 (2011); Witte v. United States, 515 U.S. 389, 397–98 (1995); Wisconsin v. Mitchell, 508 U.S. 476, 485 (1993).

Although the dissent cannot disavow this venerable—and codified—rule of sentencing law, see Jacobs, C.J., Op., post at 2, it can disregard it, justifying that action only with the conclusory plaint that we mischaracterize its views, see id. The dissent makes its views clear enough. It (1) minimizes evidence that Broxmeyer abused his position as a field hockey coach repeatedly to sexually abuse teenage girls; (2) criticizes the quality of that evidence while ignoring the fact that Broxmeyer carefully avoided an evidentiary hearing at which the details of events reported by the Probation Department in its Presentence

4

Investigation Report ("PSR"), including multiple rapes, might be produced; (3) ignores Broxmeyer's statements at sentencing, which showed no remorse and blamed his victims; and most troubling, (4) proposes that sentencing judges wear blinders, confining the matters considered to the evidence supporting the crimes of conviction. We here emphasize that this view of sentencing has no place in our jurisprudence.

The broad range of information that the district court was here entitled to consider in imposing sentence might usefully be thought to fall into three sets, each larger than the one before: (1) evidence establishing Broxmeyer's guilt for the crimes of conviction, (2) evidence supporting particular Sentencing Guidelines enhancements, and (3) evidence properly informing the court's exercise of its ultimate sentencing discretion under 18 U.S.C. § 3553(a). While the second set defeats Broxmeyer's claim that procedural error in the application of the Guidelines renders his sentence unreasonable, it is the third, largest set that compels rejection of the claim that his sentence is substantively unreasonable. See generally United States v. Wernick, --- F.3d ---, 2012 WL 3194244, at *8 (2d Cir. 2012) (distinguishing between specified facts relevant to Guidelines application and broad range of information properly considered in district court's determination of sentence under § 3553(a)).

That evidence, developed at trial and reported in the PSR, which the district court adopted, showed that, at the time of his December 22, 2007 arrest, the then-37-year-old Broxmeyer had worked for many years as a field hockey coach training female high school

5

athletes in New York, New Jersey, and Pennsylvania. Broxmeyer's interaction with the girls he coached frequently escalated from the athletic to the flirtatious to the overtly—and coarsely—sexual. For example, Broxmeyer sent several teenage girls an image of his erect penis, requesting that they provide him with sexually explicit images of themselves or others in return. He maintained such pictures in an electronic album and on two computers eventually seized pursuant to a warrant. Broxmeyer sometimes distributed these pictures to other teenagers to encourage them to produce similar images of themselves or other girls. Broxmeyer also engaged several teenage girls in a range of sexual conduct, including intercourse and sodomy. The sodomy, necessarily criminal because the girl involved was only 15, was proved to a jury's satisfaction at Broxmeyer's trial in this case. In addition, the adopted PSR recounts five rapes, two of them statutory, as well as other sexual assaults on teenage girls. The district court properly considered Broxmeyer's crimes of conviction in this context, see 18 U.S.C. §§ 3553(a)(1), 3661, and reasonably recognized that they could neither be dismissed as only "sexting," see Jacobs, C.J., Op., post at 2, nor justified as "just joking around," Resentencing Tr. at 19:4–5 (quoting defendant's characterization of conduct).

### 1. Convicted Conduct

#### a. Count Three: Attempted Production of Child Pornography

Broxmeyer's conviction for attempted production of child pornography was based on his November 2007 procurement of an image of 17-year-old K.T. posing suggestively in her

underwear.[1]  K.T. testified that, while Broxmeyer served as her field hockey coach, he routinely sent her text messages in which he told her that she was beautiful and had a nice body, which made her feel special.  In the course of their electronic communications, Broxmeyer sent K.T. a picture of his penis, and asked her to provide him with sexually explicit images of herself.  In one communication admitted into evidence at trial, Broxmeyer told K.T. she could take such pictures in a bathroom using her cell phone, thereafter using the phone to transmit the images to him.  K.T. eventually sent Broxmeyer the image of herself in her underwear.  Because the image was suggestive, but not sexually explicit, Count Three charged Broxmeyer with attempted, rather than actual, production of child pornography.[2]

Upon receipt of the underwear picture, Broxmeyer praised K.T.'s effort, but demanded more.  When K.T. sent him other non-pornographic images, Broxmeyer rebuked her, stating, "you know that's not what I was talking about."  Trial Tr. at 255:14–15.

---

[1] In this opinion, we refer to minors who were victims of the crimes of conviction or related conduct by their initials pursuant to Fed. R. Crim. P. 49.1(a)(3).

[2] Title 18 U.S.C. § 2256(8)(A) defines "child pornography" to include, inter alia, "any visual depiction . . . of sexually explicit conduct, where . . . the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct."  "[S]exually explicit conduct" is defined to include, in relevant part, "actual or simulated . . . sexual intercourse," "masturbation," and "lascivious exhibition of the genitals or pubic area of any person."  18 U.S.C. § 2256(2)(A).  Title 18 U.S.C. § 2251(a), (e), the crime of conviction, prohibits any attempt to employ, use, persuade, induce, entice, or coerce any minor to engage in "any sexually explicit conduct for the purpose of producing any visual depiction of such conduct."

7

Eventually, in December 2007, K.T. sent Broxmeyer a pornographic picture in which she appeared nude, inserting a finger into her vagina.

b.  Count Five:  Possession of Child Pornography

K.T.'s aforementioned pictures were among dozens of nude and semi-nude images of adolescent females found in Broxmeyer's possession when law enforcement officers seized his online photo album and two personal computers.  Among the images qualifying as child pornography were two depicting 17-year-old A.W., another field hockey player coached by Broxmeyer.  In one, the girl is shown inserting a finger into her vagina; in the other she sprays water from a hand-held shower head toward her nude genital area.[3]

Broxmeyer had met A.W. in 2005 when, at age 15, she attended a field hockey camp at which he was coaching.  Broxmeyer began flirting with the girl and, by 2007, had engaged her in sexual relations not only in New York, but also in California when he escorted the field hockey team on which A.W. played to a competition in that state.[4]  Broxmeyer and

_____

[3] The government offered these two images not only to prove the possession crime charged in Count Five, but also the production of child pornography charged in Counts One and Two.  In reversing these production counts, this court pointed to the lack of record evidence that Broxmeyer ever "expressly asked A.W. to send him pictures of herself." United States v. Broxmeyer, 616 F.3d at 124.  No such sufficiency concern pertains to the possession count of conviction.

[4] Because the dissent frequently references the age of consent as reflected in state statutory rape laws, see Jacobs, C.J., Op., post at 1, 5, 7–8, 19, we note that, at 17, A.W. was of age to consent to sexual relations under New York law, see N.Y. Penal Law § 130.05(3) (2007), but not under California law, see Cal. Penal Code § 261.5.  More to the point for purposes of the counts of conviction, even at 17, A.W. and K.T. remained within the age of minority under controlling federal child pornography law. See 18 U.S.C. § 2256(1) (defining

8

A.W. sometimes used cell phones to photograph themselves engaged in sexual acts. Broxmeyer also sent A.W. lewd and pornographic images of other teenage field hockey players, including the underwear and vagina images he had received from K.T. He challenged A.W. to obtain such images of other field hockey players for him, which A.W. did on several occasions.

    2.      Trial Evidence of Broxmeyer's Criminal Sexual Assault of 15-Year-Old K.M.

In reversing Broxmeyer's conviction on Count Four, this court identified no sufficiency problem in the evidence that Broxmeyer intended to—and did—engage a 15-year- old field hockey player, K.M., in criminal sexual activity, specifically, sodomy.[5] The court concluded only that the evidence was insufficient to satisfy federal jurisdiction because the sodomy occurred <u>before</u> rather than <u>after</u> Broxmeyer took the girl across a state line. <u>See</u> <u>United States v. Broxmeyer</u>, 616 F.3d at 128–30; <u>see also</u> 18 U.S.C. § 2423(a). In these circumstances, although the proved sodomy could not qualify on remand as convicted conduct, it could still be considered in the district court's Guidelines calculation and in its ultimate determination of sentence under § 3553(a). Accordingly, we summarize this evidence here.

---

"minor" to mean "any person under the age of eighteen years").

    [5] There is no question that, at 15, K.M. was <u>not</u> of age to consent to such sexual conduct with Broxmeyer. <u>See</u> N.Y. Penal Law § 130.05(3) (2007).

Beginning in September 2007, K.M.'s parents arranged for their daughter to travel on weekends from her home in Pennsylvania to New York or New Jersey to attend field hockey practices conducted by Broxmeyer. When, in early December 2007, a scheduling problem arose with respect to transporting K.M. home after a weekend practice in New York, Broxmeyer advised the girl's parents that he himself would drive their daughter back to Pennsylvania.

On December 9, 2007, at the outset of the return trip, Broxmeyer stopped in Johnson City, New York, at a community sports center that he managed called the Sportsplex and insisted that K.M. accompany him inside. There, Broxmeyer grabbed the girl, began kissing her, and removed his pants. Broxmeyer made K.M. sit in a chair, and holding the girl's head in his hand, had her perform oral sex on him. Broxmeyer then drove K.M. home, admonishing her never to tell anyone what had happened, an instruction the girl followed until she heard of Broxmeyer's arrest later in December, whereupon she told her parents of the sexual assault.

Law enforcement authorities contacted K.M. and her family after learning of the assault from a New York field hockey player, J.B., in whom K.M. had confided. When investigators interviewed K.M., she revealed that her sexual assault had a familiar prelude: Broxmeyer had sent the girl a picture of his penis, solicited sexually explicit images of her in return, and engaged the girl in sexually explicit text messages, which in fact continued after the assault.

10

### 3. Broxmeyer's Sexual Assaults on Other Teenagers

The PSR detailed numerous other sexual assaults by Broxmeyer on teenage field hockey players.

#### a. K.T.

The PSR reported that K.T., the same 17-year-old whose transmittal of a suggestive underwear picture supported defendant's Count Three conviction for attempted production of child pornography, see supra Part I.A.1.a, claimed that Broxmeyer had raped her at the Sportsplex on the night of December 21, 2007. The girl reported the assault that same night when she went with her parents to a Binghamton hospital to seek treatment. There, she told police that, earlier that day, she had asked Broxmeyer to pick her and a friend up at a local mall.[6] Broxmeyer took K.T. and her friend J.B., another 17-year-old field hockey player, to the Sportsplex, the site of the assault on K.M. a few weeks earlier, claiming he had work to do there. Soon after their arrival, Broxmeyer started tickling K.T. and tried to remove her pants. K.T. protested that she was not consenting to any sexual activity and threatened to report Broxmeyer to the police. Broxmeyer persisted, ultimately penetrating K.T.'s vagina

---

[6] Text messages made a part of the sentencing record by Broxmeyer show that he and K.T. had exchanged a number of sexually suggestive communications throughout the day of the assault, including a message in which Broxmeyer proposed playing "naked fh [i.e., "field hockey"]" at the Sportsplex. In other communications earlier that day with a teacher who urged K.T. to report Broxmeyer's misconduct to authorities, K.T. had already referred to Broxmeyer as a "raper," stating that she did intend to report him, but not right away, as she needed his help obtaining a college scholarship to play field hockey.

11

with his penis.[7] According to K.T., the assault ended when she bit Broxmeyer and kicked him in the groin. Nevertheless, K.T. and her friend allowed Broxmeyer to take them home, and soon after, Broxmeyer sent K.T. repeated apologetic text messages.[8]

When police questioned Broxmeyer in the early hours of the next morning, he admitted being at the Sportsplex the night before with K.T. and J.B. and to tickling K.T. He denied ever having any sexual contact with K.T., or any other girls, although he admitted sending K.T. nude pictures of himself and receiving pictures from her in return.

In fact, Broxmeyer subsequently acknowledged other sexual activity with K.T., but maintained that it was consensual. That other activity, which K.T. had already disclosed in her December 22 police interview, occurred on December 7, 2007. K.T. told police that on that day Broxmeyer had invited her and J.B. to his apartment, purportedly to discuss college. There, Broxmeyer took K.T. into his bedroom, where, after kissing and fondling the girl, he took off his pants and had K.T. stimulate him with her hand until he ejaculated.[9]

---

[7] A forensic examination performed on December 21 found traces of Broxmeyer's semen on K.T.'s belt buckle, but not in her vagina. Broxmeyer's saliva was also found in the girl's ear.

[8] In a 9:51 p.m. message, Broxmeyer told K.T., "Sorry if you are mad that is th[e] last thing I wanted." A minute later, he wrote, "I would never knowing[ly] do something to hurt you[.] I really thought we were just playing again[.] I am really sorry." At 9:55, Broxmeyer sent a message stating, "Just tell me you don't have [i.e., "hate"] me please."

[9] At sentencing, Broxmeyer's counsel suggested that the undeniable presence of defendant's semen on K.T.'s belt buckle on December 21 was attributable to this incident two weeks earlier.

12

b.    <u>J.B.</u>

On December 23, 2007, police questioned J.B., who corroborated elements of K.T.'s account of the events of December 21, but stated that she had not seen the reported assault—purportedly because she had her eyes closed—although K.T. had told her of its occurrence.  Nevertheless, J.B. advised police that she had herself been a victim of Broxmeyer's assaults as had other teenage girls.

Specifically, J.B. stated that sometime in November 2007, she had been at Broxmeyer's apartment watching a movie with his girlfriend.  While driving J.B. home, Broxmeyer stopped his car and started moving his hand up the girl's leg, teasing her by saying "chicken."  The girl told him to stop and refused Broxmeyer's instruction to undo her belt buckle.  At that point, he drove her home.

Although J.B. purported to be frightened by the November encounter, on December 1, 2007, she returned to Broxmeyer's apartment to watch another movie, this time in the company of her 17-year-old friend J.C.  During the movie, Broxmeyer led J.C. by the hand into his bedroom.  J.C. emerged a short time later with a shocked look on her face, prompting J.B. to ask what had happened.  Broxmeyer said he would show J.B., and proceeded to lead her into the bedroom, where he had forcible sexual intercourse with her.  The next day, J.C. told J.B. that Broxmeyer had similarly assaulted her.

Asked if she knew of any other minors whom Broxmeyer had sexually abused, J.B. identified K.M., a disclosure that, as noted earlier, led investigators to locate K.M. in

13

Pennsylvania, resulting in her testifying against Broxmeyer at trial with respect to Count Four.

### c. J.C.

Investigators also subsequently interviewed J.C., who confirmed being at Broxmeyer's apartment with J.B. on December 1, 2007. She stated that, after Broxmeyer took her into a bedroom, he removed her pants and, over her protests, had sexual intercourse with her. He then instructed her not to tell anyone about what had occurred.

### d. M.G.

Similarly, police interviewed M.G., a girl whom A.W. had identified as the person depicted in a suggestive photograph that Broxmeyer had shown her. M.G. testified at trial that Broxmeyer had been the coach of her club field hockey team for high-school age girls, during which time, he repeatedly flattered her appearance, sent her a photograph of his penis, and badgered her to send him "sexy" photographs of herself. Trial Tr. at 121:8. Eventually, M.G., who was 17 at the time, sent him a photograph of herself clad in underwear which Broxmeyer later showed to A.W.

M.G. further testified that on one occasion when Broxmeyer had driven her home from a field hockey practice, he had stopped his car and sexually assaulted her by putting his finger inside her vagina.

14

e.      M.L.

After Broxmeyer's 2007 arrest, an adult woman identified in the PSR only as M.L. came forward and reported to investigators that some 15 years earlier, in 1991–92, when she was a 13-year-old field hockey player, defendant had subjected her to three escalating sexual assaults.  On the first occasion, when the girl was in Broxmeyer's car, he ran his hand up her thigh and said "chicken" before putting his hand into her pants and fondling her.  On the second occasion, Broxmeyer forced the girl to perform oral sex on him.  Finally, after a school dance in February 1992, Broxmeyer got the girl intoxicated and had sexual intercourse with her, after which he told her not to tell anyone as he could go to jail.

B.      Broxmeyer's Sentencing

1.      The PSR Guidelines Calculation and the Statutory Sentencing Ranges

Broxmeyer's Sentencing Guidelines calculation, as reported in the PSR, reflected a total offense level of 43 and a criminal history category of I, resulting in an advisory Guidelines sentence of life incarceration.[10]  Because life imprisonment exceeded the

---

[10] Because the Probation Department and the district court applied the 2008 Sentencing Guidelines Manual to calculate Broxmeyer's sentencing range, all references to the Guidelines in this opinion are to that version.  Broxmeyer's Guidelines sentencing range, which applied without regard to Broxmeyer's uncharged sexual relations with teenage girls, was based on the following calculations:

With respect to the attempted production count of conviction, a base offense level of 32, see U.S.S.G. § 2G2.1, was enhanced two levels for distribution of child pornography, see id. § 2G2.1(b)(3); two levels for abuse of a position of trust, see id. § 3B1.3; and two levels for using a minor to commit the crime, see id. § 3B1.4, to yield an adjusted offense level of 38.

With respect to the possession count of conviction, a base offense level of 18, see id.

statutorily authorized maximum sentence of 40 years—which could be achieved by sentencing Broxmeyer to the maximum 30-year prison term for attempted production of child pornography, see 18 U.S.C. § 2251(e), and a consecutive maximum 10-year term for possession of child pornography, see id. § 2252A(b)(2)—the statutorily authorized maximum became the Guidelines sentence. See U.S.S.G. § 5G1.1(a); United States v. Dorvee, 616 F.3d 174, 180–81 (2d Cir. 2010). While the district court was not required to sentence Broxmeyer to a Guidelines sentence of 40 years' incarceration, see United States v. Booker, 543 U.S. 220, 245 (2005), it could not sentence him to fewer than 15 years, the statutorily mandated minimum on the attempted production count of conviction, see 18 U.S.C. § 2251(e).

### 2.    Broxmeyer's Sentencing Submission

On remand, Broxmeyer renewed objections to the PSR and to his Guidelines calculations that he had unsuccessfully pursued at his initial sentencing. Broxmeyer

---

§ 2G2.2, was enhanced five levels for distribution of child pornography, see id. § 2G2.2(b)(3)(C); five levels for defendant's pattern of sexual abuse or exploitation of minors, see id. § 2G2.2(b)(5); two levels for storing the images on a computer, see id. § 2G2.2(b)(6); and two levels for possession of more than 10 but fewer than 150 images of child pornography, see id. § 2G2.2(b)(7)(A), to yield an adjusted offense level of 32.

In accordance with the grouping rules in U.S.S.G. §§ 3D1.1(a) and 3D1.4, a one-level increase was applied to the higher of these two adjusted offense levels to yield a combined adjusted offense level of 39. This offense level was then enhanced five levels pursuant to U.S.S.G. § 4B1.5(b)(1), because the attempted production crime of conviction was a covered sex crime as defined by § 4B1.5 application note 2 (defining "covered sex crime" to include "an attempt . . . to commit" "an offense, perpetrated against a minor, under," inter alia, chapter 110 of title 18), and defendant had engaged in a pattern of activity involving prohibited sexual conduct. The resulting total offense level of 44 was then treated, pursuant to U.S.S.G. Ch. 5, Pt. A, application note 2, as a total offense level of 43, the highest recognized by the Sentencing Guidelines.

16

generally disputed all PSR allegations of sexual assault, maintaining that he never forced himself on any of the accusing teenagers. He denied having any sexual relations with K.T., J.B., and J.C. on the occasions these girls accused him of rape, and he maintained that his conceded sexual relationship with 17-year-old A.W. was consensual, as was any sexual conduct he may have engaged in with 17-year-old K.T. on December 7, 2007, or with 15-year-old K.M. on December 9, 2007.[11]

To minimize further the seriousness of his conduct, Broxmeyer challenged the sexual explicitness of some of the photographs found in his possession, as well as the minority of some of the girls depicted therein. He also maintained that he did not send M.G. a photograph of his erect penis until she sent him a suggestive photograph of herself.[12] He insisted that M.G.'s trial testimony—in response to a leading question—established only that Broxmeyer had "touched" her vagina, not that he had inserted his finger into it. Def.'s

---

[11] Because K.M. could not, as a matter of New York law, consent to sexual conduct with the 37-year-old Broxmeyer when she was only 15, see N.Y. Penal Law § 130.05(3) (2007), and because 17-year-old A.W. could not, as a matter of California law, consent to sexual intercourse with Broxmeyer in that state, see Cal. Penal Code § 261.5, we assume that, in describing these actions as "consensual," Broxmeyer was effectively denying the use of any physical force. Nevertheless, there is no question that engaging minors in such sexual activity would be criminal without regard to the use of force.

[12] It is not clear whether Broxmeyer was suggesting that it was excusable for a 37-year-old athletic coach to send a teenage player a photograph of his penis if she first sent him a suggestive photograph of herself. In any event, the point merits little discussion as (1) the district court resolved the question of the order of the transmittals to and from M.G. against Broxmeyer, and (2) Broxmeyer acknowledged sending K.T. a photograph of his penis before asking her for a return picture.

Resentencing Mem. at 9. Further, although M.G. testified that the action "shocked" her, Broxmeyer contended that this did not indicate that the contact was "unwelcome," and he therefore objected to M.G. being considered a "victim." Id. at 11.

Broxmeyer also raised myriad challenges to the calculation of his Guidelines sentence, specifically to the enhancements for distributing child pornography, see U.S.S.G. § 2G2.1(b)(3); directing a minor to produce and distribute pornographic images of herself, see id. § 3B1.4; engaging in a pattern of child sex abuse or exploitation, see id. §§ 2G2.2(b)(5), 4B1.5(b)(1); using a computer to commit the possession crime, see id. § 2G2.2(b)(6); and possessing more than 10, but fewer than 150, images of child pornography, see id. § 2G2.2(b)(7)(A).

### 3. The District Court's Sentencing Determination

At Broxmeyer's resentencing, the district court noted that it had already ruled on Broxmeyer's objections to the PSR at the time of his original sentencing, and that nothing of significance had changed in the interim except for the reversal of convictions on Counts One, Two, and Four.[13] Insofar as more victims had come forward in the interim, the district

---

[13] In ruling on factual objections at the initial sentencing proceeding, the district court amended the PSR to indicate that Broxmeyer "promoted," rather than "caused," A.W. to produce "several," rather than "many," images of sexual activity between herself and the defendant. The district court similarly found that trial evidence supported the PSR's statement that M.G. sent Broxmeyer a suggestive picture of herself after defendant sent her a photograph of his erect penis, rather than the other way around as defendant maintained.

At the same time, the district court declined to strike allegations of rape made by K.T., J.B., and J.C., the last two of which were then the subject of state charges. Citing U.S.S.G. § 1B1.4 (providing that sentencing court may consider "any information concerning the

court assured Broxmeyer that it would not increase his sentence based on that new information. But insofar as Broxmeyer submitted that due process precluded the district court from relying on the untried allegations of sexual misconduct reported in the original PSR, the district court ruled to the contrary. "It's a question of preponderance of the evidence and the court's entitled to consider submissions made from anybody about conduct involved here and make a decision on how much it should consider to base its sentence on. Resentencing Tr. at 4:22–5:1. The district court nevertheless noted that if Broxmeyer "disagree[d] with that approach," and wanted the court to go through all his objections again "step by step," it was "glad to do it with [him]." Resentencing Tr. at 5:1–2. In response,

_____

background, character and conduct of the defendant" in "determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted"), the court concluded that the allegations were properly included in the PSR and considered by the court "in conjunction with its sentencing obligations," regardless of whether or not they were pursued by state authorities. Sentencing Tr. at 29:24–30:2.

By the time of resentencing, these three rape charges had been dismissed, apparently pursuant to an agreement whereby Broxmeyer entered an Alford plea to third-degree criminal sexual act for his abuse of K.M., see N.Y. Penal Law § 130.40(2), for which crime he was sentenced to four years' imprisonment to run concurrently with the initial 40-year prison term imposed in this case only a few weeks earlier, see North Carolina v. Alford, 400 U.S. 25, 37–38 (1970) (holding that court may accept guilty plea despite defendant's protestations of factual innocence where court finds factual basis for plea and that plea was voluntary and intelligent); see also Silmon v. Travis, 95 N.Y.2d 470, 475, 718 N.Y.S.2d 704, 706–07 (2000) (stating that, under New York law, Alford pleas are permitted only where "the record before the court contains strong evidence of actual guilt," and observing that they "may generally be used for the same purposes as any other conviction," including "in determining predicate felon status for sentencing"). The fact that New York agreed to this global disposition of its charges against Broxmeyer only after he was sentenced to 40 years' imprisonment in this case prevents us from concluding, as urged by Broxmeyer, and possibly even the dissent, see Jacobs, C.J., Op., post at 15, that New York did not view these accusations as particularly serious or warranting a lengthy punishment.

19

defense counsel did not request any further rulings on factual objections to the assault evidence, much less a hearing. Counsel asked only that the court rule on objections to the PSR's Sentencing Guidelines calculations. The district court summarily rejected all Guidelines objections and adopted the PSR's calculations.[14] Defense counsel proceeded to argue that sentencing factors specified in 18 U.S.C. § 3553(a), including the defendant's character and history, warranted leniency and urged the court to impose a sentence of no more than the 15-year mandatory minimum.

Before imposing sentence, the district court also heard from the prosecution and from Broxmeyer himself. After portraying himself as a person who was always "the first to step

_____

[14] The summary rejection appears to have relied on reasons stated at the initial sentencing wherein the district court concluded that in calculating Broxmeyer's Guidelines offense level for attempted production of child pornography, a two-level enhancement for distribution, see U.S.S.G. § 2G2.1(b)(3), was warranted because Broxmeyer sent "a picture of a minor female [i.e., K.T.] engaged in a sex act to [A.W.]" and "caused [A.W.] to send pictures of herself to him." Sentencing Tr. at 32:8–13.

The district court further concluded that a two-level enhancement for use of a minor was warranted under U.S.S.G. § 3B1.4, despite defendant's protests that he did not direct A.W. to take and send pictures of herself, because "the evidence fairly suggests that he encouraged her to do so." Sentencing Tr. at 32:20–21.

The district court determined that in calculating Broxmeyer's Guidelines offense level for possession of child pornography, a five-level enhancement for distribution to a minor, see U.S.S.G. § 2G2.2(b)(3)(C), was warranted because of Broxmeyer's transmittal of the pornographic image of K.T. to A.W.

Finally, the court found a two-level enhancement for possession of at least 10 images of child pornography warranted under U.S.S.G. § 2G2.2(b)(7)(A) because two such images were admitted at trial, A.W. testified that "probably around 15" photographs were taken of her engaging in sexual acts with defendant, Trial Tr. at 162:25, and the online photo album and computers seized from defendant contained more than 10 images qualifying as child pornography.

20

up and admit" any wrongdoing, Resentencing Tr. at 17:13–14, Broxmeyer proceeded to deny or minimize virtually all charges against him. He dismissed his sexual communications and pornographic picture exchanges with teenage students as "just joking around." Id. at 19:4–5. He characterized those sexual relations he did acknowledge as "stupid," id. at 19:7, and professed sorrow, not for the harm caused by his conduct, but for the fact "that it is blown up to this," i.e., his criminal prosecution, id. at 20:3–4. While indicating a willingness to "apologize to anybody if they were offended" by his conduct, id. at 20:4–5, Broxmeyer maintained that any hurt was "unintentional," id. at 18:9. He insisted that he had never assaulted or raped anyone. Indeed, he suggested that he was not a victimizer but a victim of accusers who had been motivated to level false charges by Broxmeyer's refusal to compromise his professional integrity to their advantage:

> I've irritated people in my professional life because of how I stood for certain things. . . . [T]here are . . . certain people that [the prosecutor] would like to say are victims that I wouldn't kowtow to because I wouldn't change the way I do business in order to make them look better and, in reality, what's going on is certain people are using this to their advantage now.

Id. at 19:13–23. Neither at trial nor sentencing did defendant proffer any support for this self-serving assertion.

The district court proceeded to sentence Broxmeyer to concurrent prison terms of 30 years on Count Three and 10 years on Count Five. In explaining its decision to impose a sentence well above the mandatory 15-year minimum but below the 40-year statutory maximum recommended by the Guidelines, the district court acknowledged defendant's

preeminence in his field. See id. at 21:7–9 ("Colleges sought you, high schools sought you to be their coach. You're good at what you did."). Nevertheless, it found—with what can only be described as dignified understatement—that "for a long period of time," Broxmeyer had "lost perspective," failing to understand or not wanting to understand "what's appropriate or not appropriate with young ladies." Id. at 21:11–14. The district court explained that, even without regard to any sexual encounters, it viewed the text messaging and picture exchanges that informed the crimes of conviction as particularly serious, see id. at 21:20 (characterizing conduct as "way off the mark"), because, in fact, Broxmeyer was supposed to be the girls' "mentor . . . their guardian . . . their instructor," i.e., the person who was "supposed to show them how to act," id. at 21:16–18. As for Broxmeyer's denials of any but consensual sexual encounters with teenage players, the district court apparently saw no need to explore the sordid particulars of each alleged encounter to find by a preponderance that Broxmeyer had sexually assaulted teenagers in his care. It made this clear to Broxmeyer in rejecting his attempt to challenge these accusations by portraying himself as the victim of a vindictive conspiracy:

> [W]hen I take what you tell me as to what you didn't do and what [defense counsel] tells me what you didn't do and I contrast that to information I get from a number of sources that said you did do all of those things, how do you expect me to react to that? Do I have to conjure up in my mind some enormous conspiracy that all of these victims got together and said we're going to get Broxmeyer for offending us? We're going to tell all these lies about what he did to us sexually? Is that what I'm supposed to believe? Well, I don't believe it for a minute . . . .

Id. at 21:24–22:8.

22

Concluding that it needed to impose a sentence that protected the public and provided general and specific deterrence, see 18 U.S.C. § 3553(a)(2)(B), (C), but nevertheless maintaining some hope for Broxmeyer's eventual rehabilitation, the district court imposed the challenged 30-year sentence.[15]

## II.    Discussion

In reviewing Broxmeyer's sentencing challenges, our standard is "reasonableness," "a particularly deferential form of abuse-of-discretion review" that we apply both to the procedures used to arrive at the sentence (procedural reasonableness) and to the length of the sentence (substantive reasonableness). United States v. Cavera, 550 F.3d 180, 188 & n.5(2d Cir. 2008) (en banc).

---

[15] The district court's reasons for the sentence it imposed on remand echoed reasons expressed at the initial sentencing, on which occasion a number of victims were heard, either orally or through written submissions. At that time, the district court rejected Broxmeyer's attempt to excuse his own misconduct by blaming victims whom he cast as oversexed teenagers. The court observed that it was natural for teenage girls to "want to feel pretty and sexy and desirable." Sentencing Tr. at 56:19. Indeed, it was precisely that inclination, uninformed by either sufficient life experience or mature judgment, that made them "vulnerable to the kind of things that this defendant perpetrated on them." Id. at 57:14–15. Instead of serving as a "role model" and providing his teenage players with "values" by which to live their lives, defendant subjected them to "conduct [that] is just beyond belief." Id. at 57:10–19. The district court characterized the totality of events as an "unspeakable tragedy" that had harmed the victims' lives forever. See id. at 58:4–9 ("I am absolutely convinced these victims are going to suffer, that they're suffering today; that their lives have changed and will never be the same.").

23

A.    Procedural Reasonableness

Broxmeyer submits that the district court committed procedural error in (1) failing to rule on his factual objections to the PSR and (2) miscalculating his Guidelines sentence. See id. at 190; see also United States v. Arevalo, 628 F.3d 93, 96 (2d Cir. 2010). We are not persuaded.

1.    Failure To Resolve Factual Disputes

a.    Waiver

Broxmeyer contends that his sentence must be vacated and the case remanded for further proceedings because the district court failed to rule on each of his factual objections as required by Fed. R. Crim. P. 32(i)(3)(B). In fact, Broxmeyer waived any such argument before the district court. Although the district court noted that it had already ruled on Broxmeyer's factual objections at the initial sentencing, it offered to do so again "step by step." Resentencing Tr. at 5:2. Broxmeyer's counsel did not accept this invitation, replying that defendant asked only that the court rule on his objections to the PSR's Guidelines calculation. Indeed, after the district court made its Guidelines ruling and adopted the PSR, defense counsel stated, "Okay . . . we can move forward with regard to sentencing." Id. at 5:20–21. Counsel then proceeded to argue why the statutory sentencing factors set forth in 18 U.S.C. § 3553(a) supported a sentence at the mandatory minimum of 15 years' imprisonment.

24

This course of conduct is not surprising. A defendant may well try to minimize his guilt by raising objections to unfavorable information in a PSR, while still trying to avoid any appearance of a false denial that could result in his losing acceptance of responsibility consideration, receiving an enhancement for obstruction of justice, or otherwise aggravating his sentence. Those same concerns will often prompt him not to pursue a hearing or, as here, to decline a court's offer of further factfinding. Indeed, one can well understand why Broxmeyer (and certainly his lawyer) would not have thought it in his interest to have the district court proceed "step by step" through the details of the many sexual assaults reported in the PSR, much less to have the district court hear each victim testify directly to those details. But having made the choice to forgo the district court's offer of more specific findings on his objections, Broxmeyer will not be heard on appeal to complain of the inadequacy of the court's factfinding. His actions demonstrate a true waiver of any such argument, precluding appellate review. See generally United States v. Quinones, 511 F.3d 289, 321 (2d Cir. 2007) (discussing "true waiver").

b.      Plain Error

Even in the absence of true waiver, we would review the alleged Rule 32(i)(3)(B) failure only for plain error in light of Broxmeyer's failure to voice any objection at resentencing. See United States v. Wagner-Dano, 679 F.3d 83, 90, 94 (2d Cir. 2012) (adopting plain error review of Rule 32(i)(3)(B) claim where defendant failed to press factual objections not resolved by district court in adopting PSR); see also United States v. Marcus,

25

130 S. Ct. 2159, 2164 (2010) (observing that appellate court may correct forfeited error only where appellant demonstrates existence of (1) error, (2) that is "clear or obvious," (3) that affects appellant's substantial rights, and (4) that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings" (internal quotation marks omitted)). Broxmeyer cannot show plain error here.

While strict compliance with Rule 32 is clearly required by our precedent, see United States v. Arevalo, 628 F.3d at 96, Broxmeyer cites no case—nor are we aware of any—in which we have held that a district court, presented on remand with the same factual disputes on which it had already ruled at the initial sentencing, and with no appellate identification of error in those rulings, plainly fails in its Rule 32(i)(3)(B) obligations by expressly adopting those original rulings and not pronouncing them anew. See United States v. Wagner-Dano, 679 F.3d at 94 (observing that for an error to be "plain," it "must be so obvious that the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it" (internal quotation marks omitted)). Thus, Broxmeyer certainly cannot demonstrate any error plainly established in existing law.

Indeed, he cannot even show error. Insofar as Broxmeyer objected to allegations that he had engaged teenage girls in non-consensual sexual activities, the district court did rule on this point at resentencing, telling Broxmeyer that as between the accusations put forward by "a number of sources" and defendant's self-serving denials, the court rejected the latter because Broxmeyer's insinuation of a wide-ranging conspiracy among his past and present

26

field hockey players to accuse him falsely of sexual assaults was implausible. Resentencing Tr. at 22:1. If Broxmeyer did not think this statement, together with the district court's earlier reference to its authority to "consider submissions made from anybody" if supported by a "preponderance of the evidence," id. at 4:22–24, adequately addressed any concern he had about consideration of assault evidence, he was obliged to bring that to the district court's attention, see United States v. Wagner-Dano, 679 F.3d at 92 (noting defendant's obligation to object if he thinks district court has not addressed factual issue material to sentencing). Having failed to do so, he cannot demonstrate any procedural error by the district court.

Insofar as Broxmeyer now faults the district court for considering untried assault accusations without affording him an opportunity to cross-examine his accusers, we observe that, although defendant's resentencing memorandum noted that the disputed assault accusations had not been tested by cross-examination, Broxmeyer never actually sought a hearing for that purpose, nor did he argue that it would be procedural error to rely on the accusations in the absence of cross-examination.[16] The omission appears to have been tactical rather than inadvertent. After all, when Broxmeyer was afforded an opportunity at trial to cross-examine two girls, K.M. and M.G., who testified to his assaults on them, he did

---

[16] Broxmeyer requested an evidentiary hearing solely to resolve a dispute as to the number of images of child pornography he possessed, a challenge relevant only to the district court's application of a Guidelines enhancement that we need not address for reasons discussed infra Part II.A.2.c.

27

so only minimally and to no apparent effect. Thus, the district court could reasonably have understood the cross-examination point raised at sentencing as urging that the accusations be accorded little weight rather than seeking a hearing. Even now, Broxmeyer does not point to any line of cross-examination that he might have pursued at a hearing to undermine his accusers' credibility in a way that went beyond the arguments he presented to the district court. Thus, he also fails to demonstrate the substantial injury required for plain error.

Further, Broxmeyer cannot demonstrate that the district court's failure to hold a hearing sua sponte was itself plain error. See United States v. Verkhoglyad, 516 F.3d 122, 128 (2d Cir. 2008) (observing that forfeited claims of procedural error are reviewed only for plain error). A sentencing court's "largely unlimited" discretion to review information relevant to the defendant and his crime permits it to consider hearsay evidence. United States v. Gomez, 580 F.3d 94, 105 (2d Cir. 2009) (internal quotation marks omitted); see also 18 U.S.C. § 3661. Moreover, it is well established that a district court need not hold an evidentiary hearing to resolve sentencing disputes, as long as the defendant is afforded "some opportunity to rebut the Government's allegations." United States v. Phillips, 431 F.3d 86, 93 (2d Cir. 2005) (internal quotation marks omitted). Here, Broxmeyer was afforded that rebuttal opportunity through written submissions and arguments advanced by counsel in connection with both sentencings and through Broxmeyer's own statement at his resentencing.

On this record, we identify no plain procedural error in the district court's factfinding.

28

2.      Guidelines Calculations

In considering Broxmeyer's challenge to the calculation of his Guidelines sentence, we review the district court's interpretation of the Guidelines de novo, and its findings of fact relevant to the Guidelines application for clear error.  See United States v. Richardson, 521 F.3d 149, 156 (2d Cir. 2008).

a.      Count Three: Attempted Production of Child Pornography

Broxmeyer argues that the district court miscalculated his Guidelines for attempted production of child pornography in applying enhancements for use of a minor, see U.S.S.G. § 3B1.4, and distribution, see id. at § 2G2.1(b)(3).  Both arguments are meritless.

(1)      Use of a Minor Enhancement

Section 3B1.4 of the Guidelines provides for the base offense level of any crime to be enhanced by two if the defendant "used or attempted to use a person less than eighteen years of age to commit the offense."  U.S.S.G. § 3B1.4.  The enhancement does not apply, however, if the offense guideline for the crime of conviction already "incorporates this factor."  See U.S.S.G. § 3B1.4 cmt. n.2.  Relying on this comment, Broxmeyer argues that because production (or attempted production) of child pornography necessarily involves the use of a minor, no § 3B1.4 enhancement was warranted in his case.

Broxmeyer's argument fails because it conflates engaging (or attempting to engage) a minor in "sexually explicit conduct for the purpose of producing any visual depiction of such conduct," 18 U.S.C. § 2251(a), the proscribed use at issue in his crime of conviction,

29

with using a minor to photograph that conduct in an attempt to produce child pornography. In this case, Broxmeyer used 17-year-old K.T. both as the model and the photographer in his attempt to produce child pornography. The base offense level of 32, however, was dictated only by K.T.'s participation in the former role. Indeed, that base offense level would have applied even if someone else, including an adult, had been the photographer. But if the other person acting as photographer had been another child, a § 3B1.4 enhancement would properly apply in recognition of that distinct harm.[17] The same conclusion applies here, where a defendant visits these distinct harms on the same minor. See United States v. Sabhnani, 599 F.3d 215, 251 (2d Cir. 2010) (holding no impermissible duplication from application of multiple Guidelines adjustments that "aim at different harms emanating from the same conduct" (internal quotation marks omitted)). Thus, we conclude that there was no procedural error in the district court's application of a § 3B1.4 enhancement to the calculation of Broxmeyer's Guidelines offense level.[18]

---

[17] In an unpublished order, the Sixth Circuit affirmed a § 3B1.4 enhancement where the defendant directed two minors to take sexually explicit photographs of each other. See United States v. Martin, 291 F. App'x 765, 768 (6th Cir. 2008).

[18] Our dissenting colleague does not dispute this construction of the Guidelines. See Jacobs, C.J., Op., post at 6. Rather, he suggests that no additional aggravating weight can be assigned when a defendant uses a minor to produce child pornography depicting that same minor. See id. at 6–7. This argument implicates the substantive rather than procedural reasonableness of Broxmeyer's sentence, a matter we discuss infra Part II.B. See United States v. Cavera, 550 F.3d at 190–91. Even before reaching that discussion, however, we here reject the dissent's categorical conclusion as to weight. In the end, it is for the district court, in exercising its discretion to sentence within or outside the Guidelines, to decide how to weigh such dual harms to the same minor in light of the totality of the circumstances. See

Section 2G2.1(b)(3) of the Guidelines provides for a two-level enhancement to the base offense level of 32 for production (or attempted production) of child pornography if "the offense involved distribution." The district court determined that such an enhancement was warranted here by both K.T.'s distribution of images of herself to Broxmeyer and Broxmeyer's redistribution of those images to A.W. Broxmeyer argues that the enhancement was unwarranted because K.T.'s distribution of images to him was implicit in the crime of conviction and Broxmeyer's redistribution of the images to A.W. was not "relevant conduct." We need only discuss Broxmeyer's redistribution to reject these arguments as meritless.

Critical to that discussion is a legal principle stubbornly ignored by both Broxmeyer and the dissent: under the Sentencing Guidelines, an "offense" includes not only the specific conduct satisfying the elements of the crime of conviction, but all conduct "relevant" to the crime as detailed in § 1B1.3. See U.S.S.G. § 1B1.1 cmt. n.1(H);[19] see also id. § 1B1.3 cmt.

_____

United States v. Fernandez, 443 F.3d 19, 32 (2d Cir. 2006) (recognizing weight to be accorded sentencing factors as "matter firmly committed to the discretion of the sentencing judge" and beyond appellate review as long as overall sentence is substantively reasonable). That point merits little discussion in this opinion because the record suggests that the district court assigned this Guidelines factor little if any weight in sentencing Broxmeyer to a below-Guidelines sentence. Instead, the district court focused on greater concerns raised by the defendant's gross abuse of his position of trust, the larger pattern of exploitation of which the crimes of conviction were a part, and defendant's failure to accept responsibility or demonstrate remorse for his conduct. Insofar as defendant objects to these factors, we discuss them later in this opinion. See infra at 50–59.

[19] Application note 1(H) to § 1B1.1 defines "offense" to mean "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different

31

n.1 (observing that "principles and limits of sentencing accountability under the guideline are not always the same as the principles and limits of criminal liability").  The Guidelines define relevant conduct to include, among other things, "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction," U.S.S.G. § 1B1.3(a)(1)(A), as well as "all harm that resulted from [such] acts and omissions, . . . and all harm that was the object of such acts and omissions," id. § 1B1.3(a)(3).

Here, the record evidence demonstrates that the object of the attempted crime of conviction was to induce a minor to produce sexually explicit images of herself.  In this context, Broxmeyer's procurement of a sexually suggestive, albeit not sexually explicit, image of K.T. sufficed to prove him guilty of attempt.  See generally United States v. Farhane, 634 F.3d 127, 145 (2d Cir. 2011) (observing that conviction for attempt requires proof that defendant (a) had intent to commit object crime and (b) engaged in conduct amounting to substantial step towards commission).  But Broxmeyer's attempt to achieve his criminal objective hardly concluded with that procurement.  After receiving the suggestive

_____

meaning is specified or is otherwise clear from the context."  Because § 2G2.1(b)(3) does not specify or clearly indicate that "offense" carries a different meaning for purposes of applying that sentencing enhancement, we apply the definition set forth in § 1B1.1.  No different conclusion is dictated by § 2G2.1(d)(1) and application note 5 (providing for exploitation of multiple minors to be treated as separate counts of conviction for purposes of Guidelines calculation), because the attempted production of pornography at issue in Count Three involved a single minor victim, K.T.  It is the pattern of which that crime was a part that implicates other victims.

image of K.T. in her underwear, Broxmeyer continued to cajole and badger the girl for a sexually explicit photograph of herself, ultimately receiving the image of K.T. inserting a finger into her vagina. The harm resulting from inducing a minor's production and transmittal of such a sexually explicit image of herself is distinct from and greater than the harm reflected in the production and transmittal of the suggestive underwear image. Moreover, the production of a sexually explicit image was the real object of the attempt crime of conviction and, therefore, properly treated as relevant conduct for purposes of determining Broxmeyer's offense level.[20]

Further, the record shows that, in attempting to have K.T. produce sexually explicit images of herself, Broxmeyer's object was not limited to his own possession and viewing of that pornography. He further sought to distribute the images to other minors in order to induce the production of still more child pornography. As the Supreme Court has recognized, distribution of child pornography subjects the depicted child to more harm than

---

[20] Without citation to authority, the dissent submits that "the [attempted production] offense itself was getting K.T. to make the [underwear] picture, and was over when she made it or when she sent it to Broxmeyer." Jacobs, C.J., Op., post at 9. This is wrong. It may be possible to convict a defendant for attempt as soon as he commits a substantial step toward the commission of the intended crime, but unless the defendant is apprehended at that precise moment, the attempt itself is not necessarily "over." Indeed, as here, a defendant may engage in further substantial steps until his attempt to achieve the intended harmful object succeeds. While the dissent may think it noteworthy that Broxmeyer was prosecuted for attempted rather than actual production of child pornography respecting K.T., see id. at 4, that hardly precludes consideration of the real harm object of the attempt as relevant conduct under § 1B1.3(a)(3). See generally Witte v. United States, 515 U.S. at 397 (recognizing that sentencing courts may consider defendant's misconduct "even if no conviction resulted from that behavior").

that caused by production alone.  See generally New York v. Ferber, 458 U.S. 747, 759

(1982) (observing, in context of First Amendment challenge to state law punishing

dissemination of child pornography, that pornographic materials "are a permanent record of

the children's participation and the harm to the child is exacerbated by their circulation").

Thus, redistribution of both images of K.T. to A.W. is properly viewed as a further harmful

object of, and relevant conduct to, the attempted production crime of conviction.  As such,

the district court correctly applied the two-level enhancement for distribution called for by

U.S.S.G. § 2G2.1(b)(3).[21]

---

[21] Insofar as our dissenting colleague notes that the distribution in this case was limited rather than widespread, see Jacobs, C.J., Op., post at 8, 16, he makes a point that goes not to the application of the § 2G2.1(b)(3) enhancement, but to the weight the district court might give the enhancement in exercising its discretion to depart from the Guidelines or to impose a non-Guidelines sentence.  See, e.g., United States v. Wernick, 2012 WL 3194244, at *8.  We decline to conclude as a matter of law that distribution of child pornography to a small circle of persons who know the depicted child is invariably less harmful than distribution to a larger group of strangers.  This is precisely the sort of case-specific inquiry that district judges may reasonably decide warrants different conclusions depending on the circumstances at issue.

Indeed, for purposes of § 3553(a) analysis rather than § 2G2.1(b)(3) application, we note that there was a harmful purpose in Broxmeyer's distribution of K.T.'s images that went beyond the depicted victim, specifically, engaging more children in the production of child pornography.  See generally United States v. Jass, 569 F.3d 47, 68 n.13 (2d Cir. 2009) ("Congress has found that child pornography is often used as part of a method of seducing other children into sexual activity; a child who is reluctant to engage in sexual activity . . . can sometimes be convinced by viewing depictions of other children 'having fun' participating in such activity." (internal quotation marks omitted)).  This harm was not coincidental; rather, it was pursued with specific intent.  As such, a sentencing court might well deem it at least as dangerous as distribution for monetary gain in making a final § 3553(a) determination as to sentence.  See Jacobs, C.J., Op., post at 8 (identifying offenders who distribute child pornography for monetary gain as among most dangerous offenders).

34

b.    Adjustments to the Combined Offense Level

(1)    Acceptance of Responsibility

Broxmeyer contends that the district court erroneously denied him the two-level downward adjustment to his combined offense level available to a defendant who "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Whether a defendant has carried his burden to demonstrate acceptance of responsibility is "a factual question" on which we defer to the district court unless its refusal to accord such consideration is "without foundation." United States v. Taylor, 475 F.3d 65, 68 (2d Cir. 2007) (internal quotation marks omitted). Here, the record shows that the district court's denial of § 3E1.1 consideration rests on a solid foundation.

As the commentary to § 3E1.1 makes plain, the adjustment is generally not available to a defendant such as Broxmeyer "who put[] the government to its burden of proof at trial by denying the essential factual elements of guilt," even if, after conviction, he admits guilt and expresses remorse. U.S.S.G. § 3E1.1(a) cmt. n.2. To be sure, the adjustment can apply in "rare situations" to a defendant who goes to trial to assert and preserve issues that do not relate to factual guilt where pre-trial statements and conduct evidence acceptance. Id. But that is not this case. Neither before nor after trial did Broxmeyer ever clearly accept responsibility for attempting to produce and possess child pornography. Rather, he repeatedly sought to minimize his culpability for these crimes by suggesting that his sexual text messaging and photo exchanges only mimicked practices already prevalent among

35

teenagers. Further, he stated that his own conduct had been "blown up" out of proportion in being made the subject of a criminal prosecution. Resentencing Tr. at 20:3. On this record, we easily defer to the district court's decision not to accord consideration for acceptance of responsibility.

(2)     Pattern of Activity

Broxmeyer faults the district court's application of a five-level enhancement to his combined offense level pursuant to U.S.S.G. § 4B1.5(b)(1), arguing that the record fails to show the "pattern of activity involving prohibited sexual conduct" with a minor required by that guideline. While the government maintains that there is a "plethora of evidence indicating Broxmeyer engaged" in prohibited sexual conduct with minors, Appellee's Br. at 49, we need identify only two such occasions to uphold the district court's pattern finding, see U.S.S.G. § 4B1.5(b)(1) & cmt. n.4(B)(i) (stating that "defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor"). In doing so, we are mindful that the district court was entitled to consider any prohibited sexual conduct Broxmeyer engaged in with a minor, "without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion." Id. § 4B1.5 cmt. n.4(B)(ii); see, e.g., United States v. Phillips, 431 F.3d at 90 (holding that un-adjudicated act of sex abuse committed when defendant was a juvenile

36

qualified as occasion of prohibited sexual conduct under § 4B1.5(b)).[22] "Prohibited sexual conduct" includes not only conduct violating specified federal criminal statutes, id. § 4B1.5 cmt. n.4(A)(i) (citing 18 U.S.C. § 2426(b)(1)(A) (specifying federal offenses listed under chapters 109A, 110, 117, or section 1591 of title 18 of the United States Code)), but also conduct violating state law that would have constituted one of these specified federal offenses "if the conduct had occurred within the special maritime and territorial jurisdiction of the United States," 18 U.S.C. § 2426(b)(1)(B).

Broxmeyer's conviction on Count Three clearly provides one of the two occasions of prohibited sexual conduct necessary to establish a pattern of activity. Attempted production of child pornography in violation of 18 U.S.C. § 2251(a) and (e) is a federal crime codified in chapter 110 of title 18 of the United States Code. See 18 U.S.C. § 2426(b)(1)(A).

The dissent contends that the crime of conviction should not be counted as one occasion of prohibited sexual conduct in identifying a pattern. See Jacobs, C.J., Op., post at 12 & n.6. The dissent cites no authority for this argument, which we reject.[23] If the dissent

---

[22] The dissent appears to think the first clause somehow precludes consideration of the crime of conviction in identifying a pattern of activity. In fact, we construe this language to signal only that an occasion of prohibited sexual conduct occurring during the course of the instant offense does not merge with the instant offense so as to preclude the identification of a pattern.

[23] To the contrary, in United States v. Al-Cholan, 610 F.3d 945 (6th Cir. 2010), the Sixth Circuit recognized that the two required occasions of prohibited sexual conduct necessary for the pattern enhancement "may include the instant offense." Id. at 954 (internal quotation marks omitted); see also United States v. Rothenberg, 610 F.3d 621, 625 n.5 (11th Cir. 2010) (stating that "either" of two occasions of prohibited sexual conduct found by

37

were correct, one would expect the Guidelines commentary to state that "defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions in addition to the crime of conviction, the defendant engaged in prohibited sexual conduct with a minor." In the absence of any such qualifier, we decline to construe § 4B1.5(b)(1) as the dissent proposes. Instead, we accord Guidelines language its plain meaning: "two" means two, not three; and "separate" means the two occasions must be separate from each other, not that the two occasions demonstrating a pattern must be separate from (and in addition to) the crime of conviction. See generally United States v. Phillips, 431 F.3d at 92 (construing Guidelines "as if they were a statute, giving the words used their common meaning, absent a clearly expressed manifestation of contrary intent" (internal quotation marks omitted)). We further note that this guideline is intended to identify "repeat sex offenders," who pose "a continuing danger to the public." See U.S.S.G. § 4B1.5 cmt. background. In other contexts—specifically, racketeering—the law recognizes that two crimes can suffice to demonstrate a pattern of conduct posing a continuing danger to the public, even when the burden of proof is beyond a reasonable doubt. See United States v. Eppolito, 543 F.3d 25, 50 (2d Cir. 2008). We reach the same conclusion here. Proof of any two separate occasions of prohibited sexual conduct—one of which can be the crime of

district court would have been "sufficient, when joined with the offense of conviction, to warrant the finding of a 'pattern' supporting the [§ 4B1.5(b)(1)] enhancement[]" (emphasis added)).

conviction—permits the district court to find that a defendant poses the sort of continuing danger supporting a § 4B1.5(b) enhancement.

A second occasion of prohibited sexual conduct is Broxmeyer's engagement of 15-year-old K.M. in sodomy. Indeed, because this sodomy was preceded by Broxmeyer's efforts to persuade K.M. to produce pornographic images of herself, just as Broxmeyer's sexual assault on K.T. followed his efforts to have her produce pornographic images of herself, there was particular reason to view the sodomy and the production crime of conviction as indicative of a pattern of prohibited sexual conduct.

Our dissenting colleague nevertheless labels Broxmeyer's engagement of K.M. in sodomy as a "dubious" predicate for identifying a § 4B1.5(b)(1) pattern, emphasizing that this court reversed Broxmeyer's 18 U.S.C. § 2423(a) conviction for this conduct. Jacobs, C.J., Op., post at 13. But reversal of a conviction does not preclude conduct from informing sentence. Cf. United States v. Vaughn, 430 F.3d 518, 527 (2d Cir. 2005) (reiterating that even acquitted conduct can be used to calculate Guidelines sentencing range if proved by preponderance). That conclusion applies with particular force here because, as we have already observed, the cited reversal was based only on a failure to establish federal jurisdiction. This court did not identify any sufficiency defect in the trial proof of the sodomy itself, nor could it have in light of K.M.'s direct testimony.[24] Because this proved

---

[24] Our dissenting colleague resists this conclusion, noting that Broxmeyer did not concede the sufficiency of the evidence. See Jacobs, C.J., Op., post at 13 n.7. But the very language from Broxmeyer's first appellate brief quoted by the dissent, see id. ("Although

39

sodomy plainly violated N.Y. Penal Law § 130.40(2) (prohibiting persons aged 21 and older from engaging in oral sex with person under age of 17), and would have violated 18 U.S.C. § 2243(a), one of the crimes referenced in § 2426(b)(1)(A), if committed within the special maritime or territorial jurisdiction of the United States,[25] it undoubtedly qualifies as a predicate for purposes of the Guidelines pattern enhancement, see id. § 2426(b)(1)(B).

Unable to challenge this conclusion as a matter of law, the dissent suggests that the sodomy should not be relied on here because it "did not occur" to the district court to consider Broxmeyer's assault on K.M. under that part of § 2426(b)(1)(B) referring to "state offenses that would be federal offenses if done on the high seas or in a post office." Jacobs, C.J., Op., post at 13–14.[26] This pronouncement is pure speculation and necessarily defeated

perhaps producing sufficient evidence to prove the second and third elements of the offense, the government failed to prove that Broxmeyer transported her across state lines." (emphasis added by dissent)), constitutes a waiver of the issue under our precedent, see Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998) (holding that "[i]ssues not sufficiently argued in the briefs are considered waived"). And because the dissent does not—and cannot—point to any basis in the record for finding the sodomy evidence insufficient as a matter of law, it is worse than mischievous to insinuate such a defect by noting that the panel had "no occasion to consider yet another reason to reverse [Broxmeyer's] Mann Act conviction." Jacobs, C.J., Op., post at 13 n.7.

[25] Section 2243 prohibits a person from knowingly engaging "in a sexual act with another person who . . . has attained the age of 12 years but has not attained the age of 16 years," and who "is at least four years younger than the person so engaging." The sodomy testified to by K.M. clearly fell within the definition of "sexual act" as detailed in 18 U.S.C. § 2246(2)(B).

[26] In making this point, the dissent translates the statutory reference to crimes occurring within the "special maritime and territorial jurisdiction of the United States" to mean offenses committed "on the high seas or in a post office," implying some narrow category of federal sex crimes easily overlooked by the district court. Jacobs, C.J., Op., post

40

by "the presumption that the district court knew and applied the law correctly." United States v. Fernandez, 443 F.3d 19, 30 (2d Cir. 2006) (internal quotation marks omitted). In any event, we may affirm a Guidelines enhancement "on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely." United States v. Palmer, 68 F.3d 52, 56 (2d Cir. 1995) (internal quotation marks omitted). For reasons already stated, we easily conclude that the sodomy evidence pertaining to K.M. qualifies as a matter of law as a U.S.S.G. § 4B1.5(b)(1) predicate pursuant to 18 U.S.C. § 2426(b)(1)(B).

Nor does the district court's sentencing reference to Broxmeyer's "extensive history of sexually abusing children," Resentencing Tr. at 24:4, support the dissent's conclusion that only "untried offenses," and not K.M.'s sodomy, informed the district court's pattern determination. Jacobs, C.J., Op., post at 14.

First, the statement was made long after the district court had calculated Broxmeyer's Guidelines sentence. See Resentencing Tr. at 21:12–14. Thus, it cannot properly be read to explain the district court's application of a § 4B1.5(b)(1) Guidelines enhancement. Rather, the statement was made to explain the court's exercise of its broad sentencing discretion pursuant to 18 U.S.C. § 3553(a). In exercising that discretion, the district court was not

at 13–14. In fact, the statute references all sexual conduct that would be criminal if conducted on a site within federal jurisdiction. It instructs that those state sex offenses that pertain to conduct that would not be criminal if occurring within federal jurisdiction cannot count for purposes of the enhanced penalties prescribed in 18 U.S.C. § 2426(a). That is no concern with respect to the sodomy at issue.

41

limited to conduct that could support a § 4B1.5(b)(1) enhancement; it was entitled to consider any "information concerning the background, character, and conduct" of the defendant, including the totality of record evidence pertaining to his exploitation of teenage girls under his care. 18 U.S.C. § 3661; see United States v. Cavera, 550 F.3d at 190–91; see also United States v. Wernick, 2012 WL 3194244, at *8 (recognizing district court's discretion to consider "broad range of information" in evaluating § 3553(a) sentencing factors, even if not relevant to Guidelines calculation).[27]

Second, when the district court referenced Broxmeyer's "extensive history of sexually abusing children" as among the factors considered in determining Broxmeyer's sentence, Resentencing Tr. at 24:4, we do not understand it to have been referencing only the evidence of sexual assaults, much less only the evidence of untried sexual assaults. Rather, we understand the district court to have used the word "abuse" in its broadest sense to reach, in addition, the extensive evidence, much of it adduced at trial, of Broxmeyer encouraging teenagers he was supposed to mentor to engage with him in sexually suggestive communications and to create and transmit pornographic images of themselves and others.

---

[27] The dissent offers a red herring when it suggests that "vexing constitutional questions" would arise from the district court's consideration of any evidence of untried sexual misconduct by Broxmeyer. Jacobs, C.J., Op., post at 14. Such constitutional questions would arise only if the untried evidence required the district court to impose a higher sentence. See United States v. Booker, 543 U.S. at 245–49, 258–65. They do not arise where, as here, the district court (1) was well aware it was calculating non-mandatory Guidelines; (2) in any event, calculated the Guidelines without reference to the untried evidence; and (3) referenced untried misconduct in exercising its broad discretion to decide where within the statutory range for the crime of conviction defendant should be sentenced consistent with the factors identified in 18 U.S.C. § 3553(a).

42

Third, and more to the point, the suggestion that the district court did not include Broxmeyer's engagement of K.M. in sodomy in its reference to defendant's "extensive history of sexually abusing children"—or in its earlier Guidelines pattern determination—is not only speculative, but also implausible. The district court heard K.M. testify at trial to how, after her parents arranged for Broxmeyer to coach her in field hockey, he pestered the 15-year-old with sexually explicit text messages, sent her images of his penis, solicited sexually explicit photographs in return, and ultimately engaged her in sodomy. It knew, moreover, that as to this 15-year-old there was no question as to consent. Further, K.M.'s father appeared at Broxmeyer's initial sentencing to advise the district court as to the effect of defendant's abuse on his daughter and his family. In these circumstances, there is no possibility of the district court overlooking Broxmeyer's abuse of K.M. or not including it within it reference to his "extensive history of sexually abusing children."

Thus, without regard to the other prohibited sexual conduct found by the district court, the production crime of conviction and the engagement of K.M. in sodomy—both proved at trial—are sufficient by themselves to support the district court's application of a U.S.S.G. § 4B1.5(b)(1) pattern enhancement to the calculation of Broxmeyer's Guidelines sentence.

c. Count Five Objections

Insofar as Broxmeyer argues that the district court committed procedural error in calculating his adjusted offense level with respect to Count Five, we need not address his arguments because any error would necessarily be harmless. Under the Guidelines' grouping

43

rules, the district court's calculation of an adjusted offense level of 32 for Broxmeyer's possession of child pornography contributed only a one-level enhancement to his total offense level for both crimes of conviction. See U.S.S.G. § 3D1.4(b). But because Broxmeyer's resulting total offense level of 44 exceeded the highest offense level listed in the Sentencing Table, the district court treated Broxmeyer's offense level as 43, see U.S.S.G. Ch. 5, Pt. A, cmt. n.2, effectively negating the impact of the one-level grouping enhancement resulting from the Count Five offense-level calculation. In these circumstances, any error in the Count Five calculation would necessarily be harmless because it "would not, by itself, have made any difference" to the calculation of Broxmeyer's sentencing range. United States v. Hertular, 562 F.3d 433, 448 (2d Cir. 2009).

In sum, we identify no procedural error that renders Broxmeyer's sentence unreasonable so as to warrant remand.

B. Substantive Reasonableness

Broxmeyer submits that his 30-year prison sentence should be vacated as substantively unreasonable. In making this argument, he bears a heavy burden because our review of a sentence for substantive reasonableness is particularly deferential. See Gall v. United States, 552 U.S. 38, 51 (2007) (instructing appellate courts to give "due deference" to district court sentencing decisions, taking into account totality of circumstances); United States v. Rigas, 583 F.3d 108, 123 (2d Cir. 2009) (analogizing substantive unreasonableness review to manifest-injustice and shocks-the-conscience standards). That deference derives

44

from a respect for the distinct institutional advantages that district courts enjoy over their appellate counterparts in making an "individualized assessment" of sentence under 18 U.S.C. § 3553(a). Gall v. United States, 552 U.S. at 50, 51–52; accord United States v. Jones, 531 F.3d 163, 170 (2d Cir. 2008). Among those advantages is a district court's unique factfinding position, which allows it to hear evidence, make credibility determinations, and interact directly with the defendant (and, often, with his victims), thereby gaining insights not always conveyed by a cold record. See Gall v. United States, 552 U.S. at 51–52; United States v. Jones, 531 F.3d at 171. Thus, while appellate courts have a role to play in "patrol[ling] the boundaries of reasonableness," United States v. Cavera, 550 F.3d at 191, we do so modestly, not substituting our own judgment for that of district courts, see id. at 189, but rather, identifying as substantively unreasonable only those sentences that are so "shockingly high, shockingly low, or otherwise unsupportable as a matter of law" that allowing them to stand would "damage the administration of justice," United States v. Rigas, 583 F.3d at 123. This is not such a case.

In urging us to conclude otherwise, Broxmeyer argues that the district court assigned undue weight to untested aggravating allegations of sexual misconduct while failing to give sufficient weight to mitigating factors. He maintains, and our dissenting colleague agrees, that, if the district court had properly weighed the totality of the circumstances, the only substantively reasonable sentence it could have imposed would have been the statutory minimum prison term of 15 years. We are not persuaded.

45

The particular weight to be afforded aggravating and mitigating factors "is a matter firmly committed to the discretion of the sentencing judge," United States v. Fernandez, 443 F.3d at 32, with appellate courts seeking to ensure only that a factor "can bear the weight assigned it under the totality of circumstances in the case," United States v. Cavera, 550 F.3d at 191. In making that determination, we are mindful that "facts may frequently point in different directions so that even experienced district judges may reasonably differ, not only in their findings of fact, but in the relative weight they accord competing circumstances." United States v. Jones, 531 F.3d at 174.

Applying these principles here, we begin by noting that 15 years is the congressionally identified minimum prison sentence required for any defendant convicted of the production (or attempted production) of child pornography, even without a single aggravating factor. Cf. Dean v. United States, 556 U.S. 568, 575–76 (2009) (holding that Congress intended mandatory minimum sentencing enhancement for discharge of weapon under 18 U.S.C. § 924(c)(1)(A)(iii) to apply regardless of whether discharge was accidental or intentional). Thus, what Broxmeyer—and the dissent—effectively urge is that we declare, as a matter of law, that the statutory minimum is the substantively reasonable maximum in his case, thereby denying the district judge who tried this case and interacted directly with Broxmeyer and his victims the discretion to assign any weight to possible aggravating factors. This we decline to do.

While a district court is by no means required to impose a sentence of more than 15 years whenever it identifies aggravating factors in the commission of a § 2251(a) crime, it hardly abuses its discretion by doing so. Indeed, to account for aggravating circumstances in the commission of a § 2251(a) crime, Congress provided for the possibility of higher sentences, up to 30 years' imprisonment. See 18 U.S.C. § 2251(e). Whatever criticism might be directed at the severity of this 15-to-30-year sentencing range, absent identification of a constitutional violation, the judiciary cannot circumvent Congress's choices as, for example, by holding that under no circumstances could a defendant's sentence for a § 2251(a) crime above the mandatory minimum be substantively reasonable. See Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 664 (1974) ("Punishment for federal crimes is a matter for Congress, subject to judicial veto only when the legislative judgment oversteps constitutional bounds."); cf. Graham v. Florida, 130 S. Ct. 2011, 2037 (2010) (Roberts, C.J., concurring) (recognizing, in state context, "primacy of the legislature in setting sentences"). Were we to deny district courts the discretion to impose sentences within the 15-to-30-year range fixed by Congress, we would violate the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (internal quotation marks omitted).

Here, Broxmeyer's commission of the attempted production crime was informed by various aggravating circumstances, which raised his Sentencing Guidelines offense level

47

from 32 to 43, resulting in a recommended Guidelines sentence at the statutory maximum rather than minimum. That statutory maximum—40 years' incarceration—was based moreover on Broxmeyer's conviction for two crimes: attempted production of child pornography, which by itself triggered a 15-year mandatory minimum sentence; and possession of child pornography. See supra at 15–16 & n.10. The district court was hardly required to view the possession crime as "free," particularly as it reached well beyond the images Broxmeyer induced K.T. to produce. Indeed, if the district court had imposed consecutive rather than concurrent sentences, we could not conclude that the 15-year minimum for the attempted production crime prohibited the imposition of any further term of incarceration for a possession crime involving many more victims. Thus, at the very outset of our analysis, we conclude that the additional count of conviction provides a basis for expanding the substantively reasonable sentencing range here some measure above the 15-year minimum mandated for the attempted production count alone.

Further, while a district court cannot assume that a Guidelines sentence is warranted in a particular case but, rather, must make an independent sentencing determination consistent with 18 U.S.C. § 3553(a), see United States v. Cavera, 550 F.3d at 189, it would be extraordinary, and in this case unwarranted, for a reviewing court to hold that a district court abused its discretion by according any weight to aggravating Guidelines factors in deciding to impose a sentence beyond the bare minimum required for any commission of the crime of conviction, see id. (observing that district courts are "not free to ignore the

48

Guidelines, or to treat them merely as a body of casual advice" (internal quotation marks omitted)); see generally United States v. Rigas, 583 F.3d at 123 (observing that substantive reasonableness review provides defendant relief from sentence "only in the proverbial 'rare' case"). When, in United States v. Dorvee, 616 F.3d 174, we vacated a statutory—and, therefore, Guidelines—maximum sentence of 20 years for the distribution of child pornography, expressing concern as to the "highly unusual provenance" of the applicable Guidelines, id. at 188, we nowhere suggested that it would be an abuse of discretion for the district court to accord some weight to the referenced Guidelines in imposing a sentence above the statutory minimum. Indeed, to the extent Broxmeyer's argument implicitly urges such a conclusion, we here reject it. Moreover, insofar as Dorvee was concerned that a maximum sentence was there imposed based on speculation that the defendant was a pedophile likely to engage minors in sexual conduct, see id. at 183–84, this case is distinguishable in presenting ample record evidence of Broxmeyer actively engaging minors in sexual conduct, for purposes of both photographing it and participating in it.

Finally, the district court's decision to sentence Broxmeyer to a total 30-year prison term—more than the 15-year minimum for attempted production of child pornography, but less than the recommended 40-year Guidelines sentence for the two crimes of conviction—cannot be deemed an abuse of discretion in light of at least four aggravating factors supported by the record and relevant under 18 U.S.C. § 3553(a).

49

First, as the district court expressly found, Broxmeyer's crimes involved the abuse of a position of trust conferred on him by "parents and the community" to train and mentor adolescent girls. Resentencing Tr. at 24:14; see id. at 21:16–17. That trust was based on an expectation that Broxmeyer would help the girls develop their athletic talents, and presumably the character that has long been associated as a by-product of adolescent participation in sports. Instead, Broxmeyer abused the trust by using the close physical contact he was thus afforded to numbers of teenage girls—access that the parents and community likely would not have afforded the average male of his age—to corrupt the girls' emerging sexual awareness "for [his] own gratification." Id. at 24:15.[28] This factor by itself suffices to expand the range of reasonable sentences available to the district court well above the 15-year minimum that would be required for any attempt to use a minor to produce child pornography.

Second, the district court found that Broxmeyer abused the trust repeatedly. This is not a case in which a defendant succumbed to temptation on one occasion to use one girl in an attempt to produce one image of child pornography, conduct that would nevertheless have required a 15-year sentence. Rather, over a number of years, Broxmeyer induced and

_____

[28] K.M.'s father made this point at Broxmeyer's initial sentencing when, addressing the defendant directly, he stated, "We trusted that you would instruct and coach our daughter on the proper techniques of field hockey. Instead you poisoned her with your own filthy addictions and desires. We trusted that you would use your position as coach and instructor to teach our daughter to become a better athlete and person. Instead, you used your title and your position to take advantage of a young, innocent girl." Sentencing Tr. at 41:16–22.

50

encouraged a number of teenage athletes to take pornographic photographs of themselves, or of other girls, and to send them to him. Indeed, he maintained a collection of these items, and sometimes distributed them in order to secure others. We will not conclude that such persistent activity can bear no weight in expanding the range of substantively reasonable sentences beyond the mandated minimum.

To support its contrary conclusion, the dissent maintains that the only relevant trust in this case was that owed by Broxmeyer to K.T., and that trust was not seriously abused by having K.T. produce pornographic images of herself because the girl had reached the age of sexual consent under New York law. See Jacobs, C.J., Op., post at 7–8. The analysis is misguided. First, Broxmeyer's abuse of K.T.'s trust cannot so easily be dismissed as trivial. Broxmeyer was K.T.'s coach. Not only did he have a significant advantage over the teenager in terms of age and life experience, he was in a position to make decisions that could affect her future: deciding what position she would play, how much playing time she would be given, what tournaments she would attend, and what assistance she would receive with gaining college athletic scholarships.[29] As a player, K.T. was understandably eager for Broxmeyer's advice and approval, inclined to think he had her best interests at heart, and

_____

[29] The record demonstrates that K.T. delayed reporting Broxmeyer's sexual misconduct because she needed his help to secure a college scholarship. See supra at 11 n.6. That last point was reiterated in the letter from J.C. read at Broxmeyer's initial sentencing. J.C. reported that, as the child of a single mother without much money, "my big hope to get into college was a scholarship so I worked hard and I listened to every word Todd [Broxmeyer] told me in hopes to earn a scholarship. Everything he told me though was lies to get me to really trust him." Sentencing Tr. at 46:17–21.

51

unlikely to question his judgment or directives. Broxmeyer knew all this and took advantage of it first to flatter K.T. with attention and then to lure her into an escalating sexual relationship, one bearing few indicia in the record evidence of what the dissent refers to as conduct between "consenting adults." Jacobs, C.J., Op., post at 1. The critical factor here is not whether K.T. was of legal age to consent to a sexual relationship with Broxmeyer, but whether Broxmeyer abused the trust the girl had placed in him to secure her participation in the production crime of conviction. We conclude that the record easily supports such a finding.

Second, and more to the point, even if Broxmeyer's abuse of K.T.'s trust was the required focus of a § 3B1.3 Guidelines enhancement, see United States v. Roberts, 660 F.3d 149, 164 (2d Cir. 2011) (holding that defendant must abuse trust of "victim" for § 3B1.3 enhancement to apply), the dissent cannot contend that any such evidentiary limit applied to the district court's exercise of its overall discretion pursuant to 18 U.S.C. § 3553(a), see 18 U.S.C. § 3661; see also United States v. Wernick, 2012 WL 3194244, at *8. The district court was entitled to conclude from the totality of the evidence that Broxmeyer's abuse of K.T.'s trust was no isolated incident. Rather, it was pervasive among the teenagers he coached, a fact that magnified both the seriousness of the crime of conviction and the need for deterrence, thereby expanding the substantively reasonable sentencing range well above the statutory minimum.

52

Third, the crime of conviction was part of a larger pattern of sexual abuse. The evidence shows that Broxmeyer's sexual exploitation of the girls with whom he was entrusted frequently escalated from flirtation to sexual communications to the transmittal of sexually explicit photographs of himself to demands for sexually explicit photographs of the girls to sexual relations—the last frequently assaultive.

Broxmeyer complains that untested allegations of sexual assault became "the tail that wags the dog" of his challenged sentence. Appellant's Br. at 50. The dissent appears to go further, faulting any consideration of Broxmeyer's assaultive conduct in imposing sentence in this case. See Jacobs, C.J., Op., post at 1–4, 11–15. As we noted at the start of our discussion of the relevant facts, see supra at 3–5, this view of sentencing is wrong as a matter of law. See 18 U.S.C. §§ 3553(a), 3661. In Williams v. New York, 337 U.S. at 247, the Supreme Court expressly recognized that because a sentencing judge's task, "within fixed statutory or constitutional limits[,] is to determine the type and extent of punishment after the issue of guilt has been determined," it is "[h]ighly relevant—if not essential—to his selection of an appropriate sentence" that he possess "the fullest information possible concerning the defendant's life and characteristics." Id. This is no new principle. "[B]oth before and since the American colonies became a nation," sentencing judges "in this country and in England . . . exercise[d] a wide discretion in the sources and types of evidence used to assist [them] in determining the kind and extent of punishment to be imposed within limits fixed by law." Id. at 246; accord Pepper v. United States, 131 S. Ct. at 1240; Witte v. United States, 515

53

U.S. at 397–98 (collecting cases recognizing that "sentencing judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come" (internal quotation marks omitted)); Wisconsin v. Michell, 508 U.S. at 485 (recognizing that sentencing judges have traditionally "considered a wide variety of factors in addition to evidence bearing on guilt in determining what sentence to impose on a convicted defendant"). Such a broad inquiry will "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996); accord Pepper v. United States, 131 S. Ct. at 1239–40. But there is no question that such an inquiry appropriately considers "a defendant's past criminal behavior, even if no conviction resulted from that behavior." Witte v. United States, 515 U.S. at 397 (internal quotation marks omitted); see United States v. Vaughn, 430 F.3d at 527. Thus, the district court acted well within its discretion in considering the evidence of Broxmeyer's sexual assaults on teenagers within his care and in concluding that this conduct magnified rather than mitigated the crimes of conviction as well as any assessment of Broxmeyer's character, thereby also magnifying the punishment appropriately imposed.

Insofar as Broxmeyer maintains that the untested evidence of assaults was simply insufficient to support a sentence in excess of 15 years, much less one of 30 years, we disagree. The challenged allegations of sexual assault can hardly be dismissed as untested. Broxmeyer's engagement of 15-year-old K.M. in sodomy had been proved to a jury's satisfaction beyond a reasonable doubt. As for the remaining assault allegations, the district

court not only had the PSR's detailed account of this abuse, it also had the particular advantage of having witnessed firsthand the trial testimony of three of Broxmeyer's assault victims, K.M., M.G., and K.T. The first two girls specifically testified, subject to cross-examination, about Broxmeyer's assaults on them. Insofar as K.T., by agreement of the parties, did not testify to her December 21, 2007 rape by Broxmeyer, the district court nevertheless had the opportunity to make a general assessment of her credibility at trial. Thereafter, it heard her speak at Broxmeyer's initial sentencing as to the effect of the December 21 rape on her life. Of course, the court was also aware of the contemporaneous forensic evidence and Broxmeyer's December 21 text messages, quoted supra at 12 n.8, which seriously undermined his denial of any sexual relations with K.T. on that night. Further, the district court had sentencing letters from J.B. and J.C. about the effects of Broxmeyer's assaults on them.

The totality of this evidence, if credited, was plainly sufficient to permit the district court to make a preponderance finding that Broxmeyer's commission of these assaults was "more likely than not" true. See United States v. Coppola, 671 F.3d 220, 250 (2d Cir. 2012). And in light of the district court's firsthand observation of at least three assault victims, and its specific rejection of Broxmeyer's denials, it can hardly be deemed clear error for the district court to have credited this evidence. See United States v. Awan, 607 F.3d 306, 312

55

(2d Cir.), <u>cert. denied</u>, 131 S. Ct. 969 (2011).[30]  Nor can there be any question that such evidence of assaults on girls from whom Broxmeyer had first procured or attempted to procure child pornography significantly aggravated the seriousness of the crimes of conviction and demonstrated a particular need for strong deterrence, warranting a sentence well above the mandated minimum 15 years' incarceration.

Insofar as the dissent urges otherwise by suggesting that Broxmeyer's assault on K.M. not only failed to support a federal conviction under 18 U.S.C § 2423(a), but also could not be considered on resentencing to demonstrate the particular seriousness of the crimes of conviction, we will not repeat what we have already said in concluding that Broxmeyer's engagement of K.M. in sodomy supported a Guidelines pattern enhancement under U.S.S.G. § 4B1.5(b)(1).  <u>See</u> <u>supra</u> at 39–43.  We here reiterate only that a district court enjoys considerably more discretion in the evidence it may consider when making a final sentencing decision under 18 U.S.C. § 3553(a), <u>see</u> <u>id.</u> § 3661, than it does when applying a particular guideline.  <u>See</u> <u>United States v. Wernick</u>, 2012 WL 3194244, at *8.  That discretion entitled it to consider not only the sodomy of K.M., but the full range of Broxmeyer's sexual exploitation of teenagers in his care, and to accord this information considerable aggravating

---

[30]  The dissent submits that "the majority cannot dispute that the district court made no findings as to whether Broxmeyer used force or whether each uncharged sexual encounter was, in fact, criminal." Jacobs, C.J., Op., <u>post</u> at 3 n.3.  To be sure, the district court did not identify what particular state statute would have been violated by each assault, but, in crediting the victims rather than Broxmeyer, it necessarily found that the sexual activities were not consensual and, therefore, criminal.  For reasons discussed <u>supra</u> Part II.A.1.a, Broxmeyer waived the opportunity for more particular factfinding.

weight in assessing the seriousness of the crimes of conviction, the defendant's history and character, and the need for deterrence.

Indeed, just as a court would be entitled to view the possession of burglary tools as a more serious crime when committed by a defendant who had also cased several target locations, solicited confederates, and actually committed one or more burglaries, so in this case, the fact that the attempted production and possession crimes of conviction fell within a larger pattern of sexual exploitation that included numerous assaults expanded the range of substantively reasonable sentences considerably above the statutory minimum.

Fourth, the district court found that Broxmeyer showed a disturbing lack of remorse for, or even appreciation of, the seriousness of the totality of his conduct, a circumstance that further expanded the range of substantively reasonable sentences to allow the district court to afford adequate specific deterrence and protection of the public. See 18 U.S.C. § 3553(a)(2)(B), (C). Throughout, Broxmeyer blamed his victims rather than himself for the range of sexual misconduct at issue, portraying the girls as willing participants in both the production of child pornography and at least some of his sexual relations with them. However disappointing it might be that some of the high school girls involved with Broxmeyer did not always conduct themselves like ladies, as the district court recognized, it was Broxmeyer who, by virtue of his position as an educator and coach, was "supposed to show them how to act." Resentencing Tr. at 21:17–18. Broxmeyer, however, not only failed to do so, he turned the girls' immaturity and lack of judgment to his own advantage.

57

Through resentencing, Broxmeyer also minimized his own enticement of teenagers to produce child pornography for him, saying he was "just joking around." Id. at 19:4–5. Indeed, he acknowledged only the possibility that some people may have been hurt by his actions, virtually ignoring the detailed discussion of sustained harms reflected in the victim impact statements presented at his original sentencing. And his only professed regret was that his conduct had been "blown up" to the point of a criminal prosecution. Id. at 20:3.

On this record, the district court could reasonably conclude that a sentence well above the statutory minimum was necessary to signal the seriousness of the crimes of conviction, promote respect for law, afford adequate deterrence, and protect the public from further crimes by the defendant. See 18 U.S.C. § 3553(a)(2)(A)–(C). Further, on this record, a reviewing court cannot conclude that the district court's choice of a below-Guidelines sentence of 30-years' imprisonment fell outside the wide range of sentencing choices that might be considered substantively reasonable. See Gall v. United States, 552 U.S. at 51; United States v. Cavera, 550 F.3d at 191; United States v. Jones, 531 F.3d at 174.

Nor are we persuaded to conclude otherwise by Broxmeyer's reference to various mitigating factors.[31] For example, Broxmeyer—and the dissent—emphasize that many of

_____

[31] The district court's statement that it had "great difficulty identifying any mitigating factors," Resentencing Tr. at 24:11–12, when read in context, plainly conveys that it had great difficulty identifying any mitigating factors warranting a sentence less than the 30-year term imposed. To the extent Broxmeyer charges the district court with procedural error in failing to reference each mitigation argument it considered, or even each aggravating factor on which it relied, his argument is meritless in light of well established precedent. See United States v. Cavera, 550 F.3d at 193; United States v. Villafuerte, 502 F.3d 204, 210 (2d Cir. 2007); United States v. Fernandez, 443 F.3d at 30.

58

his victims, at age 17, were capable of consenting to sexual activity in New York. See Jacobs, C.J., Op., post at 1, 5, 7–8, 19. They submit that it would necessarily be unreasonable to sentence Broxmeyer severely for obtaining sexually explicit photographs of girls with whom he could lawfully have engaged in sexual intercourse. It is a bold argument from a defendant found to have repeatedly engaged girls 17 years old (and younger) in unlawful sexual relations. It is a curious conclusion for an appellate judge who has never seen or heard any of the girls in question, by contrast to the sentencing judge whose direct contact with these victims afforded him insights into their relative maturity and ability to reject defendant's importuning. While we do not foreclose the possibility that a district court might find the fact that child pornography victims had passed the age of sexual consent mitigating in some circumstances, we are not persuaded that it was compelled to do so here.

Under federal law, which applies uniformly throughout the United States, see Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993), a 17-year-old is a minor for purposes of the child pornography crimes of conviction. We can hardly conclude—as a matter of law—that in states where a 17-year-old (or even someone younger) is deemed capable of consenting to sexual activity, a federal sentence for child pornography is capped at the mandatory minimum. Cf. United States v. Fell, 571 F.3d 264, 271–73 (2d Cir. 2009) (Raggi, J., concurring in denial of rehearing en banc) (rejecting argument that individual state views

on death penalty must inform jury selection in federal capital case).[32] Thus, we identify no abuse of discretion in the district court's failure to accord more mitigating weight to New York's age-of-consent law. Indeed, such a conclusion would be particularly unwarranted in light of the district court's finding that the crimes of conviction were part of a larger pattern of sexual exploitation by an adult entrusted with the care of the minors at issue, and where some evidence—such as that pertaining to 15-year-old K.M., 13-year-old M.L., and 17-year-old A.W. (in California)—suggested that Broxmeyer was, at best, indifferent to the age of his victims or their legal capacity to consent.

Insofar as Broxmeyer faults the district court for not according mitigating weight to a study he proffered showing the prevalence of sexual electronic communications among teenagers, we identify no abuse of discretion. As the district court observed, Broxmeyer occupied a position where he was supposed to help his teenage athletes develop good judgment. It hardly made him <u>less</u> culpable that, instead, he exploited teenagers' bad

---

[32] It would be more than curious to conclude that as a matter of substantive reasonableness, a court must view a defendant's attempt to produce child pornography using a 16-year-old as a more serious crime if the child were in New York (where 17 is the age of consent) than if the child were in Pennsylvania (where 16 is the age of consent). <u>See</u> 18 Pa. Cons. Stat. § 3122.1. All the more curious to reach that substantive reasonableness conclusion with respect to a defendant in the United States communicating electronically with a 14-year-old in Brazil or a 13-year-old in Vietnam in order to produce child pornography on the theory that those children had reached the age of consent in their respective countries. <u>See</u> Codigo Penal art. 217-A (Braz.), <u>available at</u> http://www.planalto.gov.br/ccivil_03/Decreto-Lei/Del2848compilado.htm; Bo Luat Hinh Su Cua Nuoc Cong Xa Hoi Chu Nghia Viet Nam [The Penal Code of the Socialist Republic of Vietnam], (1999) 15/1999/QH10, art. 112(4) (Viet.), <u>available at</u> http://moj.gov.vn/vbpq/en/Pages/vbpq.aspx?loaivb=Code.

judgment about engaging in such communications to secure their participation in even more disturbing sexual behavior.

Finally, Broxmeyer maintains that the need to guard against unwarranted sentencing disparities, see 18 U.S.C. § 3553(a)(6), rendered any sentence greater than the mandatory minimum substantively unreasonable. The point merits little discussion because, in identifying other high school coaches who engaged in illegal sexual activity with their students, yet received lower sentences, Broxmeyer failed to provide sufficient information to compel the district court to find that these persons were so similarly situated to himself that any disparity in sentence would be unwarranted. See United States v. Fernandez, 443 F.3d at 28. Even if he had been able to make such a showing, however, § 3553(a)(6) "is only one of several factors that must be weighted and balanced," and how that is done is a matter that remains "firmly committed to the discretion of the sentencing judge." United States v. Coppola, 671 F.3d at 254 (internal quotation marks omitted).

In sum, we identify no abuse in how the district court weighed the totality of the aggravating and mitigating factors, nor in its selection of the challenged sentence. Broxmeyer was no passive collector of child pornography. He was a predator who abused his position of trust as a coach to encourage teenage athletes to produce child pornography for him and to engage teenagers in sexual relations that were always exploitative and frequently criminal. In these circumstances, and where the statutory sentencing range is a minimum prison term of 15 years and a maximum of 40 years, with the latter being the

61

recommended Guidelines sentence, we conclude that a below-Guidelines prison term of 30 years did not fall outside the range from which the district court could select a substantively reasonable sentence.[33]

## III. Conclusion

To summarize, we conclude as follows:

1. Defendant waived his procedural challenge to the district court's factfinding at sentencing. In any event, we identify no plain error in these findings.

2. There is no merit to defendant's various challenges to the district court's Guidelines calculations in this case as they pertain to his conviction for attempted production of child pornography. Alleged Guidelines calculation errors pertaining to the conviction for possession of child pornography are not discussed as they would necessarily be harmless.

3. There is no merit to defendant's argument that any sentence above the minimum term of 15 years mandated by his conviction for attempted production of child pornography, see 18 U.S.C. § 2251(a), (e), is substantively unreasonable. Broxmeyer was also convicted of possession of child pornography, and the crimes of conviction were committed under aggravating circumstances recognized by the Guidelines and relevant to the factors specified

---

[33] Because this court only reviews the challenged 30-year sentence imposed by the district court, we express no view as to the propriety of hypothetical sentences, whether at the 15-year minimum or 40-year maximum. Specifically, we indicate no "misgiving" that a 40-year sentence was not imposed. Jacobs, C.J., Op., post at 20.

62

in 18 U.S.C. § 3553(a).  On this record, the challenged 30-year prison sentence falls within the range of substantively reasonable choices available to the district court.

Accordingly, the judgment of conviction is AFFIRMED.

DENNIS JACOBS, <u>Chief Judge</u>, dissenting:

I respectfully dissent from the affirmance of the 30-year prison sentence and would remand for imposition of the 15-year mandatory minimum sentence.  18 U.S.C. § 2251(e).

Broxmeyer has been sentenced for two offenses against the federal sovereign: possession of child pornography, and attempted production.  Since the maximum sentence for possession of the number of images he possessed is ten years, and since the mandatory minimum for attempted production is 15 years, I focus on the sentence for attempted production (as does the majority).

Broxmeyer's attempt consisted of inducing a 17-year old to take a lewd photo of herself.  Under New York law, a 17-year old (such as the victim, K.T.) is of the age of consent.  <u>See</u> N.Y. Penal Law § 130.05(3)(a); <u>see also</u> <u>id.</u> §§ 130.25, 130.40.  She and Broxmeyer could do with each other whatever consenting adults may do behind closed doors in New York.  True, the federal statute treats a 17-year old as a minor, 18 U.S.C. § 2256(1), so that a lewd photograph of her must be classified as child pornography.  But surely it is an arresting irony that the only thing forbidden between Broxmeyer and K.T. was photography.

And the sentence was stiffened by reason of "distribution" because after she took the picture of herself she transmitted it to Broxmeyer.  In short, the offense of conviction for which he was sentenced to thirty years imprisonment consisted in whole of sexting.[1]

I start there because a reader of the majority opinion may find it hard to keep in mind what Broxmeyer was convicted of, and what he was sentenced for.  As the majority vigorously affirms, a sentencing court is not limited to the conduct giving rise to the offense of conviction.  Nor is an appellate court so limited; and I would agree with much of what is said in the majority opinion if it were not cast as rebuttal to a crude caricature of my views.  My objection is this: the offense of federal conviction has become just a peg on which to hang a comprehensive moral accounting.  But in imposing a sentence that can be upheld as reasonable, a court should not lose sight of the offense of conviction.

---

[1] This Court described the conduct of conviction as sexting in United States v. Broxmeyer, 616 F.3d 120, 123, 124, 126 (2d Cir. 2010) (hereinafter "Broxmeyer I").  The word has entered common usage for the reason that it has become a common practice.  Rene Lynch, 'F-bomb,' 'sexting' among new Merriam-Webster dictionary words, L.A. Times, Aug. 14, 2012, available at http://www.latimes.com/news/nation/nationnow/la-na-nn-f-bomb-dictionary-20120814,0,2597300.story (last accessed Aug. 16, 2012).

I respectfully argue that the majority has done just that.  In the fact section of the majority opinion, the offenses of conviction are embedded in graphic accounts (twice as long) of misconduct that (however egregious) forms no basis for either of the convictions for which Broxmeyer was sentenced.  The fact segment of the majority opinion is largely preoccupied with an act underlying both [i] a federal Mann Act conviction (18 U.S.C. § 2423(a)) that was reversed,[2] and [ii] a state prosecution for which Broxmeyer was convicted and is imprisoned.  Maj. Op. at 9-11.  Much of the rest is a catalog account of sexual activities with other high school girls for which Broxmeyer could not be charged in federal court.  Maj. Op. at 11-15.  And it is not at all clear how much of this long fact recitation is premised on findings that were actually made by the district court.[3]

Moreover, the majority's analysis does not rely on any of that misconduct; mainly, it primes and incites the reader, who might otherwise focus on the offense of

---

[2] Broxmeyer I, 616 F.3d at 127-30.

[3] For example, the majority opinion recounts Broxmeyer's use of force in sexual encounters.  Maj. Op. at 11-15.  But the majority cannot dispute that the district court made no findings as to whether Broxmeyer used force or whether each uncharged sexual encounter was, in fact, criminal.

3

conviction, and the fact that it amounts to a single act of attempted sexting.

When the majority opinion does get to the offense of conviction (attempted production), it is enlarged to include additional, subsequent conduct. True, Broxmeyer continued to importune K.T. to sext him nude pictures of herself, and did so with more success. But if that were the offense, Broxmeyer would have been charged with *production itself,* not the attempt*.* The prosecution chose not to do so, for its own (presumably sufficient) reasons. Maj. Op. at 33.

My conclusion is that it is error to impose a 30-year sentence for an offense that amounts to attempted sexting. My reasons are: **[I]** the statutory range from 15 to 30 years calls for a calibration according to severity of the offense; **[II]** the enhancements to base offense level do not bear the weight assigned to them; **[III]** the enhancement to the adjusted offense level for a pattern of sexual misconduct is unsustainable as a matter of law; **[IV]** the sentence is substantively unreasonable; and **[V]** the sentence is not supported by the 18 U.S.C. § 3553 factors.

4

**I**

For the offense of producing child pornography (and attempt), Congress opened a considerable range, of 15 to 30 years. Broxmeyer's base offense level of 32 (which yields 121 to 151 months in his Criminal History Category) lies below the mandatory minimum. Various U.S. Sentencing Guidelines enhancements yielded a Guidelines sentence of life in prison. The enhancements were applied without manifest error; but a Guidelines calculation that so far exceeds the statutory maximum should give pause. In this instance, many of the enhancements reflect no incremental evil beyond the base offense itself. And the base offense itself is the eliciting of (in the majority's words) a "suggestive, but not sexually explicit" self-photograph from a girl who was of the age of consent in New York--surely the least of the evils that Congress could have contemplated when it drafted the statute.

A substantively unreasonable sentence is rarely encountered. The standard is tough, as it ought to be. The sentence must do damage to the administration of justice because the sentence imposed was "shockingly high, shockingly low, or otherwise unsupportable as a matter of law." United States v. Rigas, 583 F.3d 108, 123 (2d Cir. 2009). But though rare, there are instances that justify

5

vacatur.  E.g., <u>United States v. Stewart</u>, 590 F.3d 93 (2d Cir. 2009), <u>reh'g denied</u>, 597 F.3d 514 (2d Cir.), <u>cert. denied sub nom.</u>, <u>Sattar v. United States</u>, 130 S. Ct. 1924 (2010).  Here, the administration of justice is damaged because the layers between mandatory minimum and statutory maximum have been foreshortened and flattened to a pancake.  Thus, in a case in which the offense of conviction would seem to barely justify the minimum, the maximum has been made the minimum.  Cf. <u>United States v. Dorvee</u>, 616 F.3d 174, 186-87 (2d Cir. 2010) (as amended) (observing that, due to enhancements that "are all but inherent to" offenses involving child pornography, "[a]n ordinary first-time offender" is likely to receive a sentence "approaching the statutory maximum," which leaves "virtually no distinction between the sentences" for relatively run-of-the-mill offenders and "the most dangerous offenders").


**II**

How did this happen?  First, several enhancements were imposed to increase the base offense level (this Section); then a pattern enhancement was applied to the adjusted offense level (Section III).

The one-level enhancement for grouping the two offenses of conviction is sound.  All the others have no more than

6

hyper-technical validity.  In reviewing these enhancements, it helps to keep in mind that Broxmeyer was convicted of attempt only because, though he encouraged K.T. to photograph herself without clothes, the single photo that became the subject of the prosecution was a snapshot she took of herself in her underwear.[4]  I will take the enhancements one by one.

* * *

A two-point enhancement was imposed for "using a minor" because K.T. took the photo of herself.  But the most natural reading of the enhancement is that it punishes the enlistment of *another* minor in the production end of the offense.  In any event, one would think it is less harmful that the victim took the photograph herself, privately, than if it had been taken by somebody else.

* * *

A two-point enhancement for abuse of trust was imposed because Broxmeyer was K.T.'s coach.  This enhancement has a particular irony because no law--state or federal--was offended by his abuse of trust in entering into a sexual relationship with her.  Abuse of trust is surely a

---

[4] On the possession count, the other images were unambiguously pornographic.

consideration of diminished force when the victim is of the age of consent. Comparatively speaking, his exercise of that trust and influence to have her take a photograph is arguably trivial "under the totality of circumstances in the case." See United States v. Cavera, 550 F.3d 180, 191 (2d Cir. 2008) (in banc).

* * *

The district court imposed a two-point enhancement for distribution. However, nothing was posted on the internet, or multiplied, or sold. The image was transmitted to a man with whom K.T. was lawfully privileged to cohabit, and by him to a single additional person, who was also classed as an adult under state law. Broxmeyer is not one of those "most dangerous offenders" who "distribute child pornography for pecuniary gain." See Dorvee, 616 F.3d at 187.

The district court applied the enhancement entirely on the bases that [i] K.T. sent the image of herself in her underwear to Broxmeyer at his urging, and [ii] Broxmeyer transmitted the image to one other minor, A.W. (who was also 17).

K.T.'s sending of the (underclothed) image of herself to Broxmeyer arguably satisfies the requisites for a distribution enhancement--technically. But the transmission is no appreciable increment to the evil of the offense: Why

8

indeed would Broxmeyer solicit a self-photograph from K.T. unless he wished to receive it?

The majority sustains the distribution enhancement solely on the basis of Broxmeyer's re-transmission to A.W. As the majority opinion explains, an offense includes "'all relevant conduct under [U.S.S.G.] § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context.'" Maj. Op. at 32 n.19 (quoting U.S.S.G. § 1B1.1 cmt. n.1(H)). However, Broxmeyer's re-transmission to A.W. is not "relevant conduct" under § 1B1.3 because it did not occur "during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense" and was not "harm that resulted from [such] acts or omissions . . . [nor] harm that was the object of such acts and omissions." U.S.S.G. § 1B1.3(a)(1), (a)(3). The application of that test was recently reaffirmed and emphasized in United States v. Wernick, -- F.3d --, No. 10-2974-cr, 2012 WL 3194244, at *4 (2d Cir. Aug. 8, 2012). It therefore matters that the offense itself was getting K.T. to make the picture, and was over when she made it or when she sent it to Broxmeyer.

The majority opinion attempts to elide this considerable impediment by expanding the offense of

9

conviction temporally so that it is still ongoing when the re-transmission to A.W. takes place. The majority opinion does this by relying on Broxmeyer's later--successful-- efforts to induce K.T. to take and send a nude photo of herself. Maj. Op. at 33. The wording of the indictment does not allow the expansion that the majority opinion undertakes. The indictment for attempted production is limited to Broxmeyer's

> attempt[] to . . . induce . . . a minor female to
> create and produce a photograph of herself engaged
> in sexually explicit conduct and whereby th[at]
> minor female created and produced a photograph of
> herself wearing only her underwear . . . .

Indictment, United States v. Broxmeyer, at 2.

By definition, Broxmeyer's successful effort was not an "attempt," and the nude photograph Broxmeyer elicited and re-transmitted was not one of a person "wearing . . . underwear."

* * *

The majority opinion dilates upon the applicability of each of these enhancements. I don't doubt that they may apply, but in no more than a literal, textual, mechanical, formalistic way. In my view the majority and the district court fail adequately to consider whether these enhancements "can bear the weight assigned to [them] . . . under the totality of circumstances in the case." Cavera, 550 F.3d at

10

191.  In this instance, each enhancement is for conduct or a circumstance that only arguably falls within the fuzzy edge of the outer reaches of the Guidelines.

Considered separately or cumulatively, these three considerations form no basis for escalating the sentence from the base offense level of 32 (below the 15-year mandatory minimum) to an offense level of 39 (with grouping), at which the Guidelines suggest imprisonment for 262 to 327 months.

III

This already-inflated adjusted offense level was boosted by a five-point enhancement for a pattern of prohibited sexual misconduct, U.S.S.G. § 4B1.5(b), because attempted production is a "covered sex crime," id. § 4B1.5 cmt. n.2.  The circumstances of this case, however, do not begin to bear the weight of that five-level enhancement.

The majority sustains the pattern enhancement on the basis of two predicates: [i] the attempted production that is the very offense of conviction, plus [ii] the facts underlying a now-reversed conviction under the Mann Act.[5]

---

[5] The majority could not count the conviction for possession of child pornography because that offense is not a predicate to this enhancement.  See U.S.S.G. § 4B1.5 cmt. n.4(A).

11

A pattern of prohibited sexual conduct requires "at least two separate occasions[ on which] the defendant engaged in prohibited sexual conduct with a minor." U.S.S.G. § 4B1.5 cmt. n.4(B)(i). "An occasion of prohibited sexual conduct may . . . occur[] during the course of the instant offense." Id. § 4B1.5 cmt. n.4(B)(ii). However, it is more than dubious for the prohibited sexual conduct to be the very offense that is being enhanced.[6] Absent that piling on, there is no pattern, even under the majority's analysis.

---

[6] Leaving aside that a pattern usually is more than two and that a normal reading of "pattern" is best supported by a pattern enhancement when there are two predicates (which may occur during the commission of the enhanced offense) plus the offense itself, the majority opinion contends that "during the course of the instant offense," U.S.S.G. 4B1.5 cmt. n.4(B)(ii), invites counting the very offense being enhanced. Maj. Op. at 37-39 & n.22-23. The majority relies on two out-of-circuit opinions that are unpersuasive: the quoted passages, consigned to footnotes, are dicta. In those cases, each defendant committed at least two (and, in one case, more than one hundred) predicate acts actually counted to establish a pattern, separate from the offense of conviction. See United States v. Al-Cholan, 610 F.3d 945, 955 (6th Cir. 2010); United States v. Rothenberg, 610 F.3d 621, 625-27 (11th Cir. 2010).

The wording of the commentary is that a predicate "may be considered whether the occasion [inter alia] *occurred during* the course of the instant offense." U.S.S.G. § 4B1.5 cmt. n.4(B)(ii) (emphasis added). If a pattern enhancement was meant to be applied to count a predicate *that is the instant offense*, the Guidelines would allow the enhancement if the instant offense is a "covered sex crime" and the defendant has committed *one* other predicate act.

12

It is therefore hardly worth dealing with the sole remaining predicate (Broxmeyer's conviction for interstate transportation of a minor with intent to engage in criminal sexual activity), except to observe briefly that such a predicate is also dubious.  The Mann Act conviction was reversed by this Court for want of the interstate transport element.  Broxmeyer I, 616 F.3d at 127-30.  The majority opinion therefore relies on what it thinks is left of the jury verdict,[7] coupled with the principle that a pattern enhancement to a federal offense can be composed of state offenses that would be federal offenses if done on the high seas or in a post office.  Maj. Op. at 37, 40 (citing 18 U.S.C. § 2426(b)(1)(B)).  This analysis did not occur to the district court.  No wonder.

---

[7] The majority opinion emphasizes that this Court in Broxmeyer I identified no problem with the sufficiency of evidence.  Maj. Op. at 9-10.  That is correct insofar as we reversed on another basis.  But Broxmeyer did not concede that the evidence was sufficient, and we had no occasion to consider yet another reason to reverse his Mann Act conviction.  See Broxmeyer Br., Broxmeyer I, No. 09-1457-cr, at 38-39 ("Although *perhaps* producing sufficient evidence to prove the second and third elements of the offense, the government failed to prove that Broxmeyer transported her across state lines." (emphasis added)).  Broxmeyer certainly had no obligation to pile on additional arguments beyond that for which he prevailed in having his conviction reversed, just so he could argue upon re-sentencing that he had not conceded what may have been other bases for attacking his conviction had the conviction not already been fatally flawed.

13

Instead the district court relied on the several untried offenses detailed in the fact sections of the majority opinion--and not used in the majority's analysis. See Pre-Sentencing Report at ¶ 48; Re-Sentencing Tr. at 5:14-19 (adopting Probation Department's calculation), 24:3-4 (referencing Broxmeyer's "extensive history of sexually abusing children"). The majority is cautious enough to avoid relying on those incidents because of the vexing constitutional questions such reliance would raise. See Gall v. United States, 552 U.S. 38, 60 (2007) (Scalia, J., concurring) (discussing United States v. Rita, 551 U.S. 338, 371-75 (2007) (Scalia, J., concurring)). Thus the majority has substituted one pattern, which it perceives, for the pattern relied on by the district court. That substitution runs counter to the theme, passim in the majority opinion, that sentencing is a matter of the district judge's discretion, not ours. I am left in considerable doubt as to whether the district judge would have imposed the pattern enhancement relying on the majority's analysis, and not on the facts found in sentencing.[8]

---

[8] It seems to me that the most an appellate court should do in that circumstance is to reject or cast doubt on the basis for the district court's ruling, identify possible alternative predicates, and remand.

14

Like the majority, I will forgo discussion of the procedural and constitutional problems that beset the district court's approach.  But it is surely remarkable that virtually the whole vast differential, between the 15-year mandatory minimum and the 30-year statutory maximum sentence imposed, is attributable to conduct that is no federal offense: the conduct that formed the defective basis for the (now reversed) Mann Act charge was a state conviction on which Broxmeyer is serving a concurrent four-year state sentence.

**IV**

The five-level "pattern" enhancement raised Broxmeyer's offense level to 44--an upper limit automatically reduced to 43 for a sentence of life imprisonment.  That calculation-- if not actually procedural error--is sound only as a matter of arithmetic and accounting.  But it proves too much: something needs to be re-thought when in a case like this, the Guidelines calculation yields a life sentence.  That is the sentence imposed on Jeffrey Dahmer, who killed people, and ate them.

The life sentence was automatically reduced to the statutory maximum of 30 years.  A statutory maximum is appropriate only for the worst offenders.  Unfortunately, we

15

have seen such defendants. They are people who force small children to engage in sexual and sadomasochistic acts, who photograph or video the scene, and who broadcast it to the world, leaving the children with the pain of the experience and the anguish of knowing that degenerates are gloating over their abuse and humiliation.

Broxmeyer's offense would seem to be at the other end of the continuum. I therefore believe that a sentence exceeding 15 years is substantively unreasonable.

The majority opinion responds that there were no procedural errors in applying enhancements that reached a Guidelines sentence of imprisonment for life. But the tests for procedural and substantive reasonableness should be cross-checks; here, the first operates as the enemy of the second. The majority never really gauges whether the enhancements can truly "bear the weight assigned to [them] . . . under the totality of circumstances in the case." Cavera, 550 F.3d at 191.

The majority floats the idea that the 30-year sentence is some kind of indulgence. Thus the majority opinion claims that Broxmeyer received a below Guidelines sentence because the range resulting from the enhancements was imprisonment for life. Maj. Op. at 31 n.18, 58, 62. This is not even technically sound, because a statutory maximum

16

caps any Guidelines sentence.  U.S.S.G. § 5G1.1(a).  The majority opinion also suggests that 40 years of incarceration would have been substantively reasonable, and treats as a mercy the district court's decision to make concurrent the ten-year sentence for possession because the district court itself concluded that continuous sentences amounting to 40 years of incarceration was excessive.  See U.S.S.G. § 5G1.2(c)-(d).  I suppose I must concede that the majority opinion would as well support a 40-year sentence as it does a sentence of 30 years.  But the majority opinion is as extreme in its way as the arbitral decision in which a teacher who molested students was returned to the classroom.  In re Unadilla Valley Cent. Sch. v. McGowan, -- N.Y.S. 2d -- , 97 A.D. 3d 1078 (3d Dep't 2012) (affirming the arbitral award).

I cannot see how Broxmeyer's offense can justify a sentence above the stiff, 15-year mandatory minimum.  The majority opinion responds that Broxmeyer's offense is not absolutely the most innocuous conceivable offense, and posits the hypothetical case of a "defendant [who] succumbed to temptation on one occasion to use one girl in an attempt to produce one image of child pornography."  Maj. Op. at 51.  Even assuming (as I must) that this hypothetical offender would be less culpable than Broxmeyer, the majority

17

opinion's error of law is to hold that only such a hypothetical offender can claim that a sentence above the mandatory minimum is substantively unreasonable. Maj. Op. at 47 ("[A district court] hardly abuses its discretion" by "impos[ing] a sentence of more than 15 years whenever it identifies aggravating factors in the commission of a § 2251(a) crime"). If any sentence between the minimum and the maximum is substantively reasonable as a matter of law unless the offense borders on innocence itself, there is no such thing as substantive unreasonableness in this area.

The assumption that any offense other than the most innocuous deserves a sentence above the mandatory minimum runs counter to the Sentencing Commission's approach. For many child pornography offenses, the Commission sets the base offense level *below* the mandatory minimum (knowing that the usual enhancements will raise the Guidelines range to the minimum). U.S. Sent'g Comm'n, The History of the Child Pornography Guidelines 45-46 (2009). Accordingly, the mandatory minimum is not reserved only for the minimal offense, but includes a considerable range of bad conduct that certainly includes Broxmeyer's offense of conviction.

* * *

The majority opinion likens the substantive unreasonableness standard to the "shocks-the-conscience"

18

standard used in substantive due process analysis. I accept the analogy. I don't claim that my aging conscience is especially tender, but it is still capable of shock; and it is shocked by a 30-year term of incarceration for the offense of attempting to persuade a woman who is of the age of consent to take a lewd photograph of herself and send it.

**V**

The factors listed at 18 U.S.C. § 3553(a) do not support a sentence at the 30-year maximum, which means that Broxmeyer's sentence is substantively unreasonable. United States v. Jass, 569 F.3d 47, 65 (2d Cir. 2009); see also Cavera, 550 F.3d at 189. A 30-year prison sentence is far "greater than necessary[] to comply with the purposes set forth in [§ 3553(a)(2)]." 18 U.S.C. § 3553(a). Fifteen years in prison is a sentence more than sufficient to reflect the seriousness of the offense for which Broxmeyer was *convicted*. Such a lengthy term of incarceration, taken together with the collateral consequences of his conviction (including a life term of supervision upon his release, and an obligation to register as a sex offender, Amended Judgment), ensure that Broxmeyer is adequately deterred and that the public is sufficiently protected. I see no prospect that Broxmeyer will again coach young women.

19

* * *

Thus it is that, in a case in which the underlying offense is attempted sexting, a Guidelines analysis that exceeds life in prison is deemed flawless; the imposition of a maximum sentence is treated as a downward departure; 40 years is suggested in <u>dicta</u> to be reasonable; a 30-year maximum sentence is affirmed, with the seemingly wistful misgiving that a 40 year sentence--achievable by piling maximum upon maximum--was a missed opportunity; and 15 years of imprisonment is deemed minimal because it has been set as the mandatory minimum.