*U.S. v. Hampton*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of December, two thousand twenty-one.

PRESENT:

> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
>> *Circuit Judges*,
> J. PAUL OETKEN,
>> *District Judge*.*

_____

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                          No. 20-2986

RUSSELL HAMPTON, AKA "TJ",

> *Defendant-Appellant*,

AMAR SCOTT, AKA "A", JOHN SIMMONS,
YULANDER GREEN, AKA "L", AKA "LANDER",
JERRICK DENSON, AKA "D", ISAIAH WOODS, AKA
"IZZY", MICHAEL JACKSON, AKA "BOOSUM", AKA

_____

* Judge J. Paul Oetken, of the United States District Court for the Southern District of New York, sitting by designation.

"BOOTS", LAMAR SIMMONS, AKA "LIL DADDY",  JAVONNE JACKSON, AKA "DUTCH", AKA "VON", DEARICK SMITH, AKA "ACE", AKA "LIL D", DEREK TAYLOR, AKA "SWIFF", MICHAEL WALKER, AKA "AWOL", JEFFREY DENSON, AKA "JEFF", AKA "BLUE", MARCUS JOHNSON, AKA "MIGGS", MARVIN SIMMONS, AKA "JR", AKA "JUNIOR", CAMERON CHARLES, AKA "CAM", TRAVIS HOUNSHELL, AKA "TRAV", BRANDON WHEELER, AKA "LITTLE MAN", AKA "WEED", MICHAEL NESMITH, JEREMIAH NETTLES, JOSEPH LOVING, HARRY NESMITH, LYNNARD DAVIS, JANICE SNIPES, JAY JAYQUAN WYNNE, AKA "JAYQUAN GEROD WYNNE", AKA "TIPSY", TEVON HAYMON,

*Defendants.*†

_____

FOR APPELLEE: KATHERINE GREGORY (Monica J. Richards, *on the brief*), *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY.

FOR APPELLANT: TINA SCHNEIDER, Law Office of Tina Schneider, Portland, ME.

Appeal from a judgment of the United States District Court for the Western District of New York (Siragusa, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on August 31, 2020, is **AFFIRMED**.

In July 2011, a federal jury convicted Defendant-Appellant Russell Hampton of (1) Racketeer Influenced and Corrupt Organizations ("RICO") conspiracy, in violation of 18 U.S.C. § 1962(d); (2) conspiracy to distribute narcotics, in violation of 21 U.S.C. § 846; and (3) knowingly and unlawfully possessing a firearm in furtherance of the narcotics conspiracy,

† The Clerk of Court is directed to amend the case caption to conform to the above.

in violation of 18 U.S.C. § 924(c). The RICO and drug trafficking conspiracies were alleged to have spanned January 2006 to April 2009. In August 2013, the district court sentenced Hampton principally to an aggregate 30-year term of imprisonment for these convictions.

Hampton appealed both his convictions and his sentence. In March 2017, this court affirmed Hampton's convictions, but vacated his sentence and remanded for resentencing because, as the parties agreed on appeal, the Sentencing Guidelines range adopted by the district court in 2013 was incorrect. *See United States v. Scott*, 681 F. App'x 89, 96 (2d Cir. 2017). On remand, Hampton's Guidelines range was determined to be 292 to 365 months for his conspiracy convictions, plus a 60-month consecutive sentence for the Section 924(c) conviction. In October 2017, the district court resentenced Hampton to an aggregate 25-year term of imprisonment: 20 years on the conspiracy convictions, plus a consecutive five-year term on the Section 924(c) firearm conviction.

Hampton again appealed. After the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), the parties agreed that Hampton's Section 924(c) conviction should be vacated, and in April 2020 this court remanded the matter for resentencing consistent with *Davis*.

Before Hampton's next resentencing, the Probation Office prepared a revised pre-sentence investigation report ("PSR") that included enhancements and criminal history calculations that differed from the calculations in Hampton's prior PSRs, resulting in a Guidelines range of 360 months to life imprisonment—significantly above the Guidelines ranges used at his previous sentencings. At Hampton's resentencing in August 2020, the district court adopted this revised Guidelines analysis. It then sentenced Hampton to an aggregate 18-year term of imprisonment for his conspiracy convictions, the two convictions remaining on remand. Hampton now appeals from this most recent sentence. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

3

We review sentences imposed by a district court for abuse of discretion, "a standard that incorporates de novo review of questions of law (including interpretation of the Sentencing Guidelines)." *United States v. Bonilla*, 618 F.3d 102, 108 (2d Cir. 2010).[1]

1. Procedural reasonableness

Hampton argues that his sentence is procedurally unreasonable on the ground that the Guidelines range most recently adopted by the district court was incorrect. "A district court commits procedural error when it fails to properly calculate the guideline range." *United States v. Mi Sun Cho*, 713 F.3d 716, 722 (2d Cir. 2013) (*per curiam*).

Hampton principally challenges the district court's treatment of his three prior state court convictions and related sentences when calculating his revised Guidelines range. Hampton was sentenced in New York state court for convictions on primarily drug-related charges stemming from three separate arrests that occurred between June 2006 and August 2007. These prior convictions and sentences were disclosed in Hampton's 2013 and 2017 PSRs, but they were not assigned criminal history points in those PSRs. Rather, pursuant to Guidelines Section 4A1.2(a)(1), they were considered "relevant conduct" in relation to his instant offense. That Guidelines section defines a "prior sentence" as "any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). The commentary to that section elaborates on this definition, explaining that "[c]onduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." U.S.S.G. § 4A1.2 cmt. 1. Section 1B1.3, in turn, defines "relevant conduct" to include "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a); *accord United States v. Broxmeyer*, 699 F.3d 265, 282 (2d Cir. 2012).

---

[1] Unless otherwise noted, in quoting caselaw, this Order omits all alterations, citations, footnotes, and internal quotation marks.

Hampton's 2013 and 2017 PSRs considered the offense conduct underlying his prior sentences, which occurred while the racketeering and drug trafficking conspiracies were ongoing, to be relevant conduct: they were acts "committed . . . during the commission of the offense of conviction." Because they were relevant conduct, they were "part of the instant offense," and therefore were not considered for purposes of Hampton's criminal history calculations. As a result, the 2013 and 2017 PSRs concluded that Hampton had zero criminal history points, placing him in criminal history category of I.

At Hampton's 2020 sentencing, however, the district court recognized that this earlier approach to calculating Hampton's criminal history category contained a "mistake": it overlooked Guidelines Section 2E1.1, which establishes an exception for application in RICO cases such as Hampton's. App'x at 83. As the district court explained and as Hampton recognizes, application note 4 to that section provides:

> Certain conduct may be charged in the count of conviction as part of a "pattern of racketeering activity" even though the defendant has previously been sentenced for that conduct. Where such previously imposed sentence resulted from a conviction prior to the last overt act of the instant offense, treat as a prior sentence under §4A1.2(a)(1) and not as part of the instant offense. This treatment is designed to produce a result consistent with the distinction between the instant offense and criminal history found throughout the guidelines. If this treatment produces an anomalous result in a particular case, a guideline departure may be warranted.

U.S.S.G. § 2E1.1 cmt. 4.[2] For RICO convictions, this court has previously held that, pursuant to this application note, it is appropriate for a district court to consider a prior sentence for conduct that is part of the pattern of racketeering activity "only in calculating [a defendant's] criminal history," and "that the conduct underlying the previously imposed sentence should not be used in calculating the base level for the instant offense." *United States v. Minicone*, 960 F.2d 1099, 1111 (2d Cir. 1992).

---

[2] This type of "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Houtar*, 980 F.3d 268, 278 (2d Cir. 2020).

Hampton's 2020 PSR corrects the mistake made in his prior PSRs by invoking Section 2E1.1 and attributing criminal history points to his three prior sentences rather than treating those sentences simply as relevant conduct. It also assesses two additional criminal history points because some of the conduct underlying his conspiracy convictions was committed while he was serving the probation portion of his sentences imposed in New York state court for his prior crimes. As a result of this revised approach, the 2020 PSR concludes that Hampton has a criminal history category of III, and it calculates his Guidelines range as 360 months to life imprisonment.

The district court's revised interpretation of the Guidelines—and Section 2E1.1 in particular—is not erroneous. Absent this exception, the prior sentences would correctly be considered relevant conduct to his instant convictions. But because they "resulted from a conviction prior to the last overt act" of his RICO conspiracy, they are properly "treat[ed] as a prior sentence under § 4A1.2(a)(1) and not as part of the instant offense." U.S.S.G. § 2E1.1 cmt. 4.

Hampton argues that the district court erred by taking this new approach, but he does not point to any case, Guidelines provision, or other authority to support his argument. His opening brief contends that it is a "problem" that he was convicted of both RICO conspiracy *and* drug trafficking conspiracy charges, meaning that under the 2020 PSR's approach his prior sentences could have been used to calculate his offense level on the drug trafficking conspiracy conviction and to calculate his criminal history category. Appellant's Br. at 19. He further claims that the "conduct underlying the prior sentences was also used to increase his RICO conspiracy offense level" because his drug trafficking conspiracy conviction was counted as a RICO predicate act. *Id.* But he does not respond to the government's persuasive argument that the conduct underlying the prior state sentences did not affect the base offense level for his drug trafficking conspiracy conviction (and therefore did not affect his RICO base offense level, either).[3] Because Hampton's prior sentences did

---

[3] Hampton also emphasizes that the revised Guidelines calculation is in his view "simply unjust," Appellant's Br. at 20, and complains that "[i]t was wrong of the court to adopt this new and grossly unfair criminal history calculation," Appellant's Reply Br. at 6. But he does not cite any authority suggesting that perceived

6

not affect his drug trafficking conspiracy conviction or base offense levels, his prior sentences were not "triple counted," as Hampton claims. *Id.*

Accordingly, we conclude that the district court did not err in the Guidelines calculation that it used at Hampton's 2020 sentencing, and that Hampton's sentence was not procedurally unreasonable.

2. Due process

Hampton also argues that the calculation of a higher Sentencing Guidelines range at his 2020 resentencing violated his right to due process. In particular, he maintains that "[d]ue process 'requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives' thereafter," and suggests that his 2020 resentencing was infected by such motives. Appellant's Br. at 13 (quoting *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969)).

Hampton's argument misunderstands *Pearce* and its progeny. The Supreme Court's holding in *Pearce* spoke to cases in which the sentence imposed after a new trial is more severe than first imposed: "In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." 395 U.S at 726; *see also Alabama v. Smith*, 490 U.S. 794, 799 (1989) ("While the *Pearce* opinion appeared on its face to announce a rule of sweeping dimension, our subsequent cases have made clear that its presumption of vindictiveness does not apply in every case where a convicted defendant receives a higher sentence on retrial.").

More recently, this court has explained that "[w]e read *Pearce* and its progeny to require a preliminary analytical step before a reviewing court can determine whether the

---

unfairness is a ground for finding that a district court miscalculated a Guidelines range, or that a district court cannot correct a mistake in prior Guidelines calculations during resentencing. Moreover, to the extent that the application of Section 2E1.1 produces a severe or anomalous result in Hampton's case, the need for a correction is contemplated by the Guidelines commentary, which states that "[i]f this treatment produces an anomalous result in a particular case, a guideline departure may be warranted." U.S.S.G. § 2E1.1 cmt. 4. That is exactly what happened here: Hampton benefited from the district court's substantial variance below the revised Guidelines range.

presumption of vindictiveness compels a reviewing court to vacate an increased sentence." *United States v. Singletary*, 458 F.3d 72, 76 (2d Cir. 2006). At the first step, we must "determine whether the presumption even applies" by "look[ing] to see if it is reasonably likely that the District Court imposed the increased sentence because it was actually being vindictive." *Id.* In cases "[w]here the record shows that vindictiveness was not reasonably likely, then the presumption does not apply, and the defendant must affirmatively prove actual vindictiveness." *Id.*

For several reasons, Hampton fails to meet either step of this standard. To start, he did not receive an "increased sentence," *id.*, so as a threshold matter his claim does not fit into the *Pearce* framework. To determine whether a sentence is more severe, this court applies the "remainder aggregate" approach: "[W]hen reviewing a sentence imposed on remand after one or more counts have been reversed, we compare the defendant's new sentence to his previous sentence *without the vacated count(s)*." *United States v. Weingarten*, 713 F.3d 704, 711 (2d Cir. 2013) (emphasis in original). Hampton's 2017 sentence minus the vacated Section 924(c) conviction was 20 years; his corresponding 2020 sentence was a less severe 18 years.

Moreover, even if Hampton's claim somehow fit within the *Pearce* framework, the court would still need to "determine whether the presumption even applies" by "look[ing] to see if it is reasonably likely that the District Court imposed the increased sentence because it was actually being vindictive." *Singletary*, 458 F.3d at 76. Hampton has not even attempted to show a reasonable likelihood that the district court here was being vindictive, or to affirmatively prove actual vindictiveness; instead, he relies solely on his claim that the presumption attaches based on the increased Guidelines range in his revised PSR. *See* Appellant's Reply Br. at 4 ("The claim here is not that the district court was vindictive. Rather, it is that a presumption of vindictiveness attaches to the revised Presentence Report, upon which the court relied.").[4]

---

[4] The record belies any claim of actual vindictiveness. The sentencing transcript shows the district court's thorough consideration of the 18 U.S.C. § 3553 sentencing factors and its careful balancing of Hampton's

To the extent that Hampton's due process claim is based on the fact that the PSR calculated an increased Guidelines range, he does not point to any authority suggesting that such a due process right exists—particularly when the Guidelines were calculated correctly. Hampton relies on *Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016), to suggest that the revised Guidelines range violated his right to due process because of the Guidelines' general importance in sentencing. To be sure, in that case the Supreme Court recognized that "[e]ven if the sentencing judge sees a reason to vary from the Guidelines, if the judge uses the sentencing range as the beginning point to explain the decision to deviate from it, then the Guidelines are in a real sense the basis for the sentence." *Id.* at 1345 (emphasis omitted). But *Molina-Martinez* concerned cases in which the district court adopted an "erroneous, and higher, Guidelines range." *Id.* It simply does not follow from *Molina-Martinez* that there could be a due process violation if the district court corrects errors in the Guidelines range on *de novo* resentencing and those corrections result in an increased, but accurate, Guidelines range.

Hampton also points to two Fifth Circuit cases as support for his argument that the district court's adoption of the revised PSR violated due process since the increased Guidelines range did not result from new information. But the cases that Hampton cites are inapposite because they both involved situations in which the district courts imposed more severe sentences on remand and therefore the presumption of vindictiveness applied. In *United States v. Penado-Aparicio*, the Fifth Circuit explained that the criminal history detailed in the defendant's initial PSR "cannot be considered new information or subsequent occurrences that objectively support imposition *of an enhanced sentence on remand*." 969 F.3d 521, 526 (5th Cir. 2020) (emphasis added). Similarly, in *United States v. Suriano-Hernandez*, the Fifth Circuit explained that "[r]eevaluation of the same particulars of a case that were in the record used for the original sentencing is not a legitimate ground for *imposing a harsher penalty on resentencing*." 31 F. App'x 159, 2001 WL 1751451, at *2 (5th Cir. 2001) (emphasis added).

rehabilitation with the severity of Hampton's crimes. Rather than display any vindictiveness toward Hampton for his multiple appeals, the district court ultimately imposed a lower sentence, despite the increased Guidelines range, based on Hampton's positive conduct since his conviction and the factors highlighted by counsel at the sentencing hearing. There is simply no basis in the record for a claim that the sentence imposed by the district court was influenced by vindictiveness toward Hampton.

These cases do not suggest that the same information could not be used to calculate a revised—and corrected—Guidelines range.

For these reasons, we conclude that Hampton has failed to state a cognizable due process claim under the *Pearce* framework. He has not shown that a presumption of vindictiveness should apply, much less actual vindictiveness on the district court's part, or any other cognizable due process violation.

* * *

We have considered Hampton's remaining arguments and find in them no basis for reversal. For the reasons set forth above, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court